Walter A. GLAPION, Sr., Plaintiff-Appellant,

v.

The MS JOURNALIST, her engines, tackle, furniture and apparel, and Charente Steamship Co., Ltd., Defendants-Appellees.

No. 72-3067.

United States Court of Appeals, Fifth Circuit.

Dec. 12, 1973.

William S. Vincent, Jr., Clifton S. Carl, New Orleans, La., for plaintiff-appellant.

M. D. Yager, Bert M. Cass, Jr., Frank A. Courtenay, Jr., New Orleans, La., for defendants-appellees.

Before THORNBERRY, SIMPSON and CLARK, Circuit Judges.

THORNBERRY, Circuit Judge:

Appellant Walter A. Glapion, a longshoreman, filed suit against the MS Journalist and her owner[1] to recover damages for personal injuries sustained on board the vessel during loading of cargo at New Orleans. The United States District Court for the Eastern District of Louisiana found that the accident which caused appellant's injury was proximately caused by the individual negligent acts of appellant's fellow longshoremen and not by any unseaworthy condition of the ship, its equipment, or its crew.

On this appeal, appellant contends (1) that the trial court's findings on proximate cause are clearly erroneous, and (2) that the vessel owner's cargo loading operation violated certain safety regulations, thus rendering the vessel unseaworthy as a matter of law. We hold that the district court's findings on proximate cause are not clearly erroneous. Nevertheless, we vacate and remand to the district court for findings on the applicability and possible violation of 29 C.F.R. §§ 1918.81(c), 1918.81(f), and 1918.82(a)[2] as we more fully detail below.

### The District Court's Findings

The relevant facts are generally undisputed. On the day of the accident, Glapion and his fellow longshoremen were loading heavy aluminum ingots into two deep tanks of the vessel. The aluminum ingots were banded together in bundles about two feet wide and about two and one-half feet tall, weighing approximately 1,500 pounds. Each bundle was banded to a small skid.

Each draft, consisting of two bundles, one on top of the other, was lowered by a winch into the tank in a two-wire sling, with a wire under either side of the skid of the bottom bundle and around both bundles. Only the weight of the bundles held them in the sling; the bundles could come out of the sling when the weight slackened. In the normal operation, the draft was lowered to about eight to ten inches from the floor of the tank; there a lift truck took hold and moved the two bundles to their position of stow.

By the end of the day, the deep tank was so filled with bundles of ingots that

1. The owner filed an answer denying liability and lodged a third-party complaint against Glapion's employer, Atlantic & Gulf Stevedores, Inc. Subsequently, this third-party complaint was dismissed on joint motion of the ship owner and the employer.

2. These regulations appear in Title 29, Chapter XVII, entitled Occuptional Safety and Health Administration, Part 1918, entitled Safety and Health Regulations for Longshoring. The above sections were transferred from Part 1504 of Chapter XIII. See 29 C.F.R. at 83.

Subpart H—Handling Cargo
§ 1918.81 Slinging.

\*    \*    \*    \*    \*

(c) Drafts of lumber, pipe, dunnage and other pieces, the top layer of which is not bound by the sling, shall be slung in such a manner as to prevent sliders. Double slings shall be used on unstrapped dunnage, except when, due to the size of hatch or deep tank openings, it is impractical to use them.

\*    \*    \*    \*    \*

(f) Loads requiring continuous manual guidance while in motion shall be provided with tag lines.

\*    \*    \*    \*    \*

§ 1918.82 Building Drafts.

(a) Drafts shall be so built or such means shall be taken as to prevent cargo from falling from the draft.

\*    \*    \*    \*    \*

the lift truck could no longer be operated. The truck was thus removed and a new loading operation was instituted. Pursuant to this new operation, the winch was used to lower the draft into the hold to a point where it would hang suspended eight or ten inches above the floor. Four longeshoremen would then guide the draft manually over to the area where it was to be stowed, at which point the winch would lower the draft until it was securely stowed.

By the time only two drafts of ingots remained to be loaded, the longshoremen were working on a floor composed almost entirely of bundles. This floor was not completely even since all the bundles were not of uniform size. After the next-to-last draft ·had been lowered to eight to ten inches above the floor of bundles but before the draft had been securely stowed—during the time the longshoremen were in manual contact with the draft—the top bundle came loose and began to roll forward. Glapion, standing in front of the draft, was injured when the bundle pinned his hand against one of the ship's ribs.

The district judge concluded that none of the witnesses who testified could fully explain why the top bundle came loose. The court found that the top bundle slid either because two of appellant's fellow longshoremen continued to push against it after the winch had set the draft down or because the men guided the draft so that it was lowered onto an uneven part of the floor, causing the whole draft to tilt and allowing the top bundle to slide. In either case, the court concluded, negligence on the part of the longshoremen rather than any unseaworthy condition of the ship was the proximate cause of the injury. Appellant disputes the district court's findings on proximate cause and contends that the uneven floor created by the bundles produced an unseaworthy condition which was a proximate cause of the accident and resulting injury.

■■■ We of course review challenged findings of fact under the "clearly erroneous" standard. F.R.Civ.P. 52(a); McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954). Under this standard of review, "[t]he question is not simply whether the reviewing court would have found otherwise but whether the trial court could permissibly find as it did." Movible Offshore, Inc. v. M/V Wilken A. Falgout, 5th Cir. 1973, 471 F.2d 268, 271; Brown v. Aggie & Millie, Inc., 5th Cir. 1973, 485. F.2d 1293. The reviewing court should upset a finding only when it "is convinced on the whole record that the finding does not reflect the truth and right of the case." Wright, Federal Courts § 96, at 432. The record from the trial below is full of testimony indicating that an uneven floor was not a proximate cause of the accident. Consequently, this is not an appropriate case for reversal under the clearly erroneous standard, and we reject the suggestion that it is. Brown v. Lykes Brothers Steamship, Inc., et al., 5th Cir. 1973, 484 F.2d 61.

### The Safety Regulations

But our disposition of appellant's first contention in no way determines our answer to the second.[3] At the trial below, appellant first raised the issue of safety regulation violation in his proposed findings of fact and conclusions of law, submitted after the evidentiary hearing had been concluded. The district judge

---

3. The district court also found that "the procedure used in loading the ingots, including the method of composing the drafts, were reasonable . . . ." This finding, however, was evidently made without any consideration of the applicability of the safety regulations, which imposed stringent duties upon all employers of longshoring employees. A finding of reasonableness would be relevant only if those duties had been carefully considered by the finder of fact. We have noted before that these safety regulations are not designed to sanction customary industry practices. "[T]hey are geared directly to the safety of men, safety of working conditions, [and] elimination of hazards that have long made longshoring one of industry's most crippling vocations." Manning v. M/V "Sea Road," 5th Cir. 1969, 417 F.2d 603, 607.

made no mention of any safety regulations in his findings or conclusions. Thus the situation presented is nearly identical to the situation which we faced in Manning v. M/V 'Sea Road," 5th Cir. 1965, 358 F.2d 615, after remand, 1969, 417 F.2d 603, and in Seymour v. Oceanic Navigating Co., Ltd., 5th Cir. 1972, 453 F.2d 1185.

In *Manning I*, a safety regulation was called to the attention of the district court after the evidentiary hearing but prior to the entry of findings of fact and conclusions of law; and as in this case, there was no reference whatever to the regulation in findings and conclusions adopted by the district court. We vacated the district court's decision denying recovery to a longshoreman who had suffered personal injury, and remanded so that the lower court could make findings and conclusions on the applicability of the safety regulation involved, whether it was violated, and if so, its relation, if any, to the proximate cause of the injury sustained by the longshoreman.[4]

■ This court in *Seymour*, another personal injury action brought by a longshoreman against a shipowner, among others, had occasion to consider the same regulations which form the basis of this appeal, 29 C.F.R. §§ 1918.81 and 1918.82. In that case, the regulations apparently were never called to the attention of the trial court. We took judicial notice of the regulations for the first time on appeal, a procedure which was eminently proper. *See* 44 U.S.C. § 1507; 5 Moore's Federal Practice § 43.-

09, at 1369 and cases cited therein; 9 Wright and Miller, Federal Practice and Procedure, § 2410, at 356 and cases cited therein; Seymour v. Oceanic Navigating Co., Ltd., *supra*, 453 F.2d at 1192, fn. 7. We remanded for clarification of findings, and for proper consideration of these safety regulations.

The regulations cited in appellant's proposed findings and conclusions are 29 C.F.R. § 1918.81(f) and 29 C.F.R. § 1918.82(a), which deal respectively with the need for tag lines and the proper building of drafts. We note on our own that 29 C.F.R. § 1918.81(c), which deals with slinging, may also be quite pertinent.

■ Although this court could properly consider the relevance of these regulations, Seymour v. Oceanic Navigating Co., Ltd., *supra*, we deem it advisable, as a matter of proper judicial administration, to allow the district court to consider the regulations in the first instance. The district court should consider (1) whether any of the regulations is applicable, (2) whether any was violated, and (3) whether any violation of the regulations proximately caused the injury to Glapion. If the district judge feels that additional hearings are necessary to a full and fair consideration of the applicability or violation of these regulations, he should by all means hold such hearings. Seymour v. Oceanic Navigating Co., Ltd., *supra*; *Manning I and II, supra*.

The case is remanded to the district court for proceedings not inconsistent with this opinion.

---

4. On remand, the district court found that the safety regulation was inapplicable. This court reversed, found that the safety regulation had been violated, and that the violation was a proximate cause of the injury.

We also noted that the negligent violation of a regulation simultaneously makes the vessel unseaworthy. Manning v. M/V "Sea Road," *supra*, 417 F.2d 603.