**PLUM CREEK LUMBER COMPANY, Plaintiff-Appellee,**

v.

**Harry C. HUTTON, Area Director, Fred Bruno, Compliance Officer OSHA U. S. Department of Labor, F. Ray Marshall, Secretary of U. S. Department of Labor, Defendant-Appellant.**

**PLUM CREEK LUMBER COMPANY, Plaintiff-Appellant,**

v.

**Harry C. HUTTON, Area Director, Fred Bruno, Compliance Officer OSHA U. S. Department of Labor, F. Ray Marshall, Secretary of U. S. Department of Labor, Defendant-Appellee.**

**Nos. 78–3181, 78–3244.**

United States Court of Appeals, Ninth Circuit.

Nov. 26, 1979.

As Modified on Denial of Rehearing and Rehearing In Banc Feb. 13, 1980.

---

Charles I. Hadden, Washington, D. C., for defendant-appellant.

George J. Tichy, Spokane, Wash., for plaintiff-appellee.

Before HUFSTEDLER and KILKENNY, Circuit Judges, and GRANT, District Judge.*

KILKENNY, Circuit Judge:

This is an appeal from a final decision of the United States District Court denying relief on the complaint of Plum Creek Lumber Company [Plum Creek] and on the counterclaim of the Occupational Safety and Health Administration [OSHA].

## ISSUE

The primary issue is whether the district court has the power to order an employer to rescind its policy of forbidding employees to wear OSHA air-quality and noise-level testing devices. Jurisdiction exists pursuant to 28 U.S.C. §§ 1291 and 1294.

## BACKGROUND

Plum Creek is a Minnesota corporation with manufacturing facilities for lumber, plywood, and fiber board in Columbia Falls, Montana. On January 17, 1978, Fred Bruno, an OSHA Compliance Officer, visited Plum Creek's Columbia Falls workplace to investigate an explosion which had injured two Plum Creek employees. During the course of his inspection, Bruno observed conditions and practices unrelated to the explosion that appeared to violate OSHA standards. He also received a written and two oral complaints alleging various unsafe working conditions from Plum Creek employees. Finally, Bruno examined the OSHA required accident reports kept by Plum Creek and discovered records of accidents which may have resulted from the failure of employees to use personal protective equipment as required by OSHA regulations.

Bruno reported his observations, the three employee complaints, and the information contained in the accident reports to the Area Director of OSHA's Billings, Montana office. The Director then ordered complete health and safety inspections of Plum Creek's Columbia Falls facilities. On January 31, 1978, Bruno and Bobby Glover, an OSHA industrial hygienist, arrived at the workplace and announced that they would be inspecting the fiber board plant (whence came the employee complaints), the sawmill, and the plywood plant, and that they would be requesting employees to wear noise-level testing devices called "dosimeters," and air contaminant samplers.[1] However, the company told them that the inspection would be limited to the fiber board area, and that the employees would be forbidden to wear the testing devices.

---

\* The Honorable Robert A. Grant, Senior United States District Judge for the Northern District of Indiana, sitting by designation.

1. A dosimeter is a device designed to measure varying sound levels over a period of time. Sounds enter a microphone, are measured, and recorded on a memory cell. The device is approximately the size of a pack of cigarettes, with a wire extending from the main unit to a microphone about the size of a quarter. The main unit may be attached to the employee's belt or pocket, and the microphone to the shirt lapel. The connecting wire may be attached to the employee's clothing.

A personal air contaminant sampler is a battery operated pump, approximately the size of two packs of cigarettes. It is worn in a manner similar to a dosimeter, except that it has a flexible hose and silver dollar sized device in place of a wire and microphone.

Thereupon, Bruno and Glover terminated the inspection and left the workplace.

OSHA then applied for an inspection warrant, and the appropriate federal magistrate issued one. Inspection was again attempted on February 6, 1978, but the Plum Creek safety officer refused to comply with the warrant. The inspectors then withdrew. Another warrant was obtained, this time directed to the "U.S. Marshal or Anyother [sic] Authorized Officer," and authorizing inspection "including air sampling and noise level testing in a reasonable manner and to a reasonable extent, the workplaces or environments where work is performed. . . ."

However, on February 8, 1978, before the second warrant had been executed, Plum Creek filed a complaint with the district court, alleging that the proposed inspection would violate the company's Fourth Amendment rights. It also alleged that the air sampling and noise testing devices sought to be used were: (1) unreliable because an employee could sabotage their use; and (2) dangerous because they could distract employees or cause them to become entangled in moving equipment, and, therefore, an unreasonable means of inspecting. The company requested a declaratory judgment that the issuance of a warrant is not authorized by the Occupational Safety and Health Act of 1970 (29 U.S.C. § 651, *et seq.*). Plum Creek also requested an order quashing the warrants as overly broad and issued without probable cause, as well as an order that personal air sampling and noise testing were beyond the scope of the warrants as issued. The district court granted a temporary restraining order pending a hearing on the following day.

On the basis of the evidence adduced at the hearing and argument from counsel, the district court refused to extend the temporary restraining order, but did not direct Plum Creek to permit or to require its employees to wear the testing devices.

On February 13, 1978, OSHA industrial hygienists began their inspection of Plum Creek's facilities. At that time, they observed a February 10, 1978 notice to employees posted throughout the workplace stating that the wearing of noise and air sampling devices was against company policy. Nevertheless, the inspectors requested twenty-two employees to wear the devices. Sixteen of these employees refused. Of the six who agreed, three changed work shifts and only the remaining three employees actually wore the testing devices. As a result of this limited participation, OSHA's investigation of the noise and air contamination problems it believed existed in the workplace was inconclusive.

Subsequently, the answer to Plum Creek's complaint was filed together with a counterclaim and an application for a temporary restraining order. The counterclaim requested the district court to enjoin Plum Creek from impeding the OSHA investigation through its policy proscribing employee cooperation in sampling. The district court refused to issue the restraining order, but ordered a hearing on the subject.

Subsequently, the district court denied relief on both the company's claim and the Secretary's counterclaim. The district court found "that the testing devices are valuable tools; that the use of them would be reasonable; that a reasonable employer measuring the risk to employees from noise and air pollution as against the risk from accident would permit employees to wear them." The court, however, also noted that Plum Creek bears all the safety risks and pays the costs of all industrial accidents, and that OSHA could not guarantee that the testing devices would not cause any accidents. The court held that in the absence of a law requiring Plum Creek to accept the minimal risk, neither OSHA nor the court has the power to make Plum Creek rescind its policy of forbidding employees to wear the testing devices, merely because OSHA and the court believe use of the devices is a reasonable means of performing the inspection.

I.

Plum Creek advances several challenges to the validity of the search warrants and the OSHA safety and health standards con-

tained in 29 C.F.R. § 1910.95. We shall dispose of these issues before moving onto the primary one of whether the district court has the power to order Plum Creek to rescind its policy forbidding employees to wear the noise level and air contaminant sampling devices.

▪ The Secretary of Labor, acting through OSHA compliance officers is invested with carefully limited authority to enter and inspect workplaces for occupational hazards "at reasonable times . . . within reasonable limits and in a reasonable manner." 29 U.S.C. § 657(a). In *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), the Supreme Court held that warrantless inspections pursuant to the Occupational Safety and Health Act are unconstitutional. Plum Creek contends that because the Supreme Court declared warrantless inspections unconstitutional, and because the Act does not specifically authorize inspections pursuant to a warrant, no nonconsensual administrative searches are possible under the Act. However, the court in *Barlow's* implied that searches pursuant to a warrant are contemplated by the Act and regulations. (436 U.S. at 317–18, 98 S.Ct. 1816). On a set of facts almost identical to those before us, the Tenth Circuit held that OSHA administrative searches pursuant to a warrant are authorized by statute and regulations. *Marshall v. W. & W. Steel Co., Inc.*, 604 F.2d 1322 (CA10 1979). We agree. To hold otherwise would be to rule that inspections under the Act could only occur when an employer consents. Such a holding would frustrate the purposes of the Act and be susceptible to abuse by employers who could simply refuse to allow inspections.

▪ Plum Creek also contends that the Fourth Amendment makes no distinction between the probable cause standard in the criminal sense and the standard for administrative searches. Therefore, it argues, a lesser showing of probable cause standard for administrative searches is unconstitutional. The Supreme Court destroyed this argument in *Barlow's*. We quote:

"Whether the Secretary proceeds to secure a warrant or other process, with or without prior notice, his entitlement to inspect will not depend on his demonstrating probable cause to believe that conditions in violation of OSHA exist on the premises. *Probable cause in the criminal law sense is not required.* For purposes of an administrative search such as this, probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that 'reasonable legislative or administrative standards for conducting an . . . inspection are satisfied with respect to a particular [establishment].'" 436 U.S. at 320, 98 S.Ct. at 1824. [Emphasis supplied.]

The facts in the instant case satisfy the tests established by the Supreme Court. The employee complaints of unsafe conditions, the observations of compliance officer Bruno, and the accident records were ample evidence to support a finding of probable cause for an administrative search. In addition, the magistrate was presented with a request under Section 8(f)(1) of the Act[2]

**2.** Section 8(f)(1) of the Act, 29 U.S.C. § 657(f)(1), states that: "Any employees or representative of employees who believe that a violation of a safety or health standard exists that threatens physical harm, or that an imminent danger exists, may request an inspection by giving notice to the Secretary or his authorized representative of such a violation or danger. Any such notice shall be reduced to writing, shall set forth with reasonable particularity the grounds for the notice, and shall be signed by the employees or representative of employees, and a copy shall be provided the employer or his agent no later than at the time of inspection, except that upon the request of the person giving such notice, his name and the names of individual employees referred to therein shall not appear in such copy or on any record published, released, or made available pursuant to subsection (g) of this section. If upon receipt of such notification the Secretary determines there are reasonable grounds to believe that such violation or danger exists, he shall make a special inspection in accordance with the provisions of this section as soon as practicable, to determine if such violation or danger exists. If

and representations by an OSHA officer that the Plum Creek Columbia Falls facilities were selected pursuant to the standards established by Congress. Despite Plum Creek's argument that the Supreme Court erred, we could not alter the *Barlow's* decision, even if we were disposed to try. The Supreme Court's construction of the Fourth Amendment is conclusive.

Plum Creek argues that § 6(a) of the Act (29 U.S.C. § 655(a)) is an unconstitutional delegation of the power to legislate to the Secretary of Labor. It further contends that § 6(a) violates its due process rights and certain provisions of the Administrative Procedure Act [APA]. Finally, Plum Creek argues that the noise standard contained in 29 C.F.R. § 1910.15 is vague, unreasonable, arbitrary, ambiguous, indefinite or unintelligible. These arguments were not raised in the district court. Therefore, they are untimely and need not be considered here. *Singleton v. Wulff,* 428 U.S. 106, 120, 98 S.Ct. 2868, 49 L.Ed.2d 826 (1976); *Marshall v. Able Contractors, Inc.,* 573 F.2d 1055, 1057 (CA9 1978). Nevertheless, we have examined them and do not believe they are persuasive.

■■■ Congress has the power to delegate legislative rule-making authority to agencies and departments of the government. *Sunshine Anthracite Coal Co. v. Adkins,* 310 U.S. 381, 398, 60 S.Ct. 907, 84 L.Ed. 1263 (1940). While it has been said that a delegation is not valid unless Congress establishes standards within which the agency or department must remain, it is evident the standards need not be precise. The Supreme Court has held delegations to governmental authorities invalid in only two cases, *Panama Refining Co. v. Ryan,* 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935), and *A.L.A. Schechter Poultry Corp. v. United States,* 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed.2d 1570 (1935), and has upheld many very broad delegations. *See, e. g., United States v. Southwestern Cable Co.,* 392 U.S. 157, 88 S.Ct. 1994, 20 L.Ed.2d 1001

(1968); *Permian Basin Area Rate Cases,* 390 U.S. 747, 88 S.Ct. 1344, 20 L.Ed.2d 312 (1968); *American Trucking Associations, Inc. v. Atchison, T. & S.F.R. Co.,* 387 U.S. 397, 87 S.Ct. 1608, 18 L.Ed. 847 (1967). Here, Congress specifically stated that the Secretary was to promulgate as a safety and health standard "any national consensus standard, and any established Federal standard." 29 U.S.C. § 655(a). It then went on to define the term "national consensus standard" in 29 U.S.C. § 652(9) and the term "established Federal standard" in 29 U.S.C. § 652(10). We hold that this delegation clearly establishes standards for the agency to follow and is well within Congress' authority.

■■ Plum Creek objects that the regulations here involved were not promulgated under the procedures of the APA. However, in 29 U.S.C. § 655(a), Congress exempted the promulgation of the safety and health regulations from the notice and hearing provisions of the APA. Under the statute, Plum Creek simply was not entitled to a notice or a hearing before the rules were established. Plum Creek's constitutional claim of a failure of due process fails because it was not deprived of any liberty or property interest by the establishment of the safety and health standards. Concerned about the health and safety of American workers, Congress authorized the Secretary of Labor to issue regulations designed to protect those workers. The statute and regulations in no way deprive Plum Creek of any cognizable liberty or property interest.

■ Finally, Plum Creek issues a substantive challenge to 29 C.F.R. § 1910.15. We have examined the regulation and find that it is not vague, unreasonable, arbitrary, ambiguous, indefinite or unintelligible. It clearly states the degree of permissible exposure to occupational noise and declares that the employer is to reduce the sound levels to within the stated limits by feasible administrative or engineering con-

---

the Secretary determines there are no reasonable grounds to believe that a violation or danger exists he shall notify the employees or representative of the employees in writing of such determination."

trols. If those controls are not effective, employees are to be provided with personal protective equipment. Plum Creek was put on notice of what noise levels are acceptable, and it is not unreasonable for it to abide by those standards. The standards themselves are entitled to a presumption of validity and we are not persuaded that they are arbitrary or that they should be held invalid.

## II.

The district court held that it was without authority to order Plum Creek to rescind its policy of forbidding employees to wear dosimeters and air contaminant sampling devices. The court found that although the use of the devices would be reasonable, neither statute nor regulations required Plum Creek to allow its employees to wear the apparatuses, and that, therefore, the court could not enjoin Plum Creek from adhering to its policy of precluding use of the personal testing devices.

The Secretary contends that the district court has the power to enjoin Plum Creek pursuant to the provisions of the All Writs Act, 28 U.S.C. § 1651(a), and under the authority of *United States v. New York Telephone Co.*, 434 U.S. 159, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977). The All Writs Act provides: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

In *New York Telephone*, the Supreme Court held that the All Writs Act empowered the district court to order a third party telephone company to provide facilities it regularly used for its own purposes to assist the FBI to conduct a search. Full compensation was assured to the telephone company for the use of its pen register[3] and its technical assistance. In this case, as the district court found, "Plum Creek is a private employer. It bears all safety risks. The safety factor cannot be eliminated. Plum Creek pays the cost of all industrial accidents. OSHA cannot guarantee that these devices would cause none."[4] Plum Creek does not use any of the devices that OSHA wanted installed and there has been no showing that the object to be achieved could not have been accomplished by using non-company employees.[5]

The All Writs Act, read with the *New York Telephone* gloss, permits the district court, in aid of a valid warrant, to order a third party to provide nonburdensome technical assistance to law enforcement officers. It does not give the district court a roving commission to order a party subject to an investigation to accept additional risks at the bidding of OSHA inspectors. There is evidence that use of the devices attached to the bodies of the employees is a much more efficient method of sampling,[6] but in the absence of law specifying their use, we cannot order Plum Creek to bear the added risks the devices would bring.

The All Writs Act is not a grant of plenary power to the federal courts. Rather, it is designed to aid the courts in the exercise of their jurisdiction. It does not authorize a court to order a party to bear

---

3. Pen registers are devices which record the numbers dialed from a particular telephone. They do not have the capacity to listen in on a conversation or to record the numbers of the phones calling in.

4. The district court further noted, "However, any device attached to the body may possibly be caught by moving machinery, and there was evidence that any such device could distract an employee's attention from moving machinery. The latter possibility cannot be discounted."

5. The district court noted two available methods: "In the area method a stationary sampler is placed near a noisy machine or near the source of formaldehyde fumes and measures the level in the area. It does not, of course, move with the employee. In another method, an OSHA employee would wear the device and move with a plant employee, getting the same effect as if the employee were wearing the device."

6. The Secretary contends that if the use of the personal sampling devices are not used, the time necessary to complete the inspection would be increased five-fold.

risks not otherwise demanded by law, or to aid the government in conducting a more efficient investigation, when other forms are available. No cases affirming the use of the All Writs Act reflect support for that proposition.

Neither do we believe the district court has the inherent authority to order Plum Creek to permit its employees to wear the testing devices. The cases the Secretary has cited in support of such authority, *United States v. Southwestern Bell Telephone Co.*, 546 F.2d 243 (CA8 1976), and *United States v. Illinois Bell Telephone Co.*, 531 F.2d 809 (CA7 1976), were concerned with enlisting the aid of telephone companies to conduct electronic surveillance of criminal activity. That line of cases is, therefore, distinguishable from the case at bar, which involves forcing an employer to rescind a company policy so that OSHA can more efficiently conduct an investigation. This circuit has never held that the district court has such wide-ranging inherent powers that it can impose a duty on a private party when Congress has failed to impose one. To so rule would be to usurp the legislative function and to improperly extend the limited federal court jurisdiction.

### CONCLUSION

Although there is sufficient evidence to support a finding of probable cause for administrative search warrants for Plum Creek's Columbia Falls facilities, and although the use of the personal noise-level and air-contaminant measuring devices is a reasonable means of inspecting, there is no statutory or inherent authority in the district court to order Plum Creek to rescind its policy forbidding its employees to wear the OSHA devices. Accordingly, the judgment and order of the district court are affirmed.

IT IS SO ORDERED.