**In the Matter of Establishment Inspection of KEOKUK STEEL CASTINGS, Div. of Kast Metals Corp.**

**No. 80–1486.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 14, 1980.

Decided Jan. 13, 1981.

---

Mark W. Barta (on brief), Johnson, Swanson & Barbee, Dallas, Tex., for appellant; John E. McFall and Jay C. Counts, Dallas, Tex., on brief.

Guy Collier, Rockville, Md., for appellee. Howard Walderman and Florence Abrams, Attys., Dept. of Health and Human Services, Rockville, Md., and Roxanne Barton Conlin, U. S. Atty., and Christopher D. Hagen, Asst. U. S. Atty., Des Moines, Iowa, on brief.

Before ROSS, Circuit Judge, GIBSON, Senior Circuit Judge, and NANGLE, District Judge.*

ROSS, Circuit Judge.

Keokuk Steel Castings (Keokuk) appeals from the district court's denial of its motion to quash an inspection warrant authorizing representatives of the National Institute for Occupational Safety and Health (NIOSH) to enter and inspect certain areas within Keokuk's plant. We affirm, 493 F.Supp. 842.

A NIOSH health hazard evaluation was initiated at the request of an employee representative as provided for in 29 U.S.C. § 669(a)(6).[1] Keokuk refused to allow NIOSH inspectors to enter the facility without a warrant. NIOSH representatives then obtained, on an ex parte basis, an inspection warrant from the United States magistrate authorizing them to take representative breathing zone and areawide air samples and bulk samples of substances in specifically described areas,[2] conduct interviews with employees in each of these areas, as authorized by 42 C.F.R. § 85.5(a), and examine personnel records and any other records containing exposure data of employees in these areas.

---

* The Honorable JOHN F. NANGLE, United States District Judge for the Eastern District of Missouri, sitting by designation.

1. The request alleged that employees were being exposed to potentially toxic or hazardous coremaking chemicals, including isocyanates, aliphatic amines, and possibly carcinogenic aromatic amines.

2. The areas named in the warrant were: the core room of the cold-set core production process, the molding area, the pouring stations, the shakeout areas, the GIW area, all other areas where coremaking chemicals are used, stored, and disposed of and areas immediately adjacent to each of the above areas.

The purpose of the inspection and investigation, as stated in the warrant, was to determine whether any substances normally found in the areas described in the warrant are potentially toxic in such concentrations as used or found. The warrant was served on a Keokuk official on March 18, 1980. After some hesitation company officials told the NIOSH representatives that they would be allowed to enter and conduct the inspection only under certain conditions.[3] NIOSH representatives rejected Keokuk's attempt to limit the scope of the warrant and Keokuk filed a motion to quash the warrant. On March 31, 1980, NIOSH petitioned the issuing magistrate to have Keokuk held in contempt.

The district court upheld the validity of the inspection warrant but refused to find Keokuk in contempt on the ground that under the circumstances the refusal to honor the warrant until clarification was not unreasonable. It issued an order interpreting the warrant to include the use of personal air sampling devices by employees.[4]

Keokuk, in appealing the holding of the district court, asserts that: 1) NIOSH was without authority to seek a warrant or, in the alternative, to seek one in an ex parte proceeding; 2) the warrant was based on insufficient probable cause; and 3) the scope of the intended inspection was overbroad with regard to personal air sampling devices and employee interviews.

█ Keokuk contends that because NIOSH had promulgated no specific rules and regulations for seeking inspection warrants, it could not seek the warrant; and that even if it had done so, it could not have obtained an ex parte warrant. We disagree.

NIOSH was established as a research adjunct to OSHA in the Occupational Safety and Health Act of 1970 (codified at 29 U.S.C. § 651). In the Act Congress expressly granted NIOSH the same authority to enter, inspect, and investigate as that enjoyed by the Secretary of Labor under section 657.

Keokuk cites *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), as support for its argument that NIOSH cannot seek a warrant without promulgating appropriate regulations. Such reliance on *Barlow's* is misplaced. The question addressed by the Supreme Court in that case was whether a warrantless search pursuant to OSHA regulations violated the fourth amendment. *Barlow's* does not stand for the proposition that an agency is without authority to carry out its statutory duty in the absence of specific regulations. In *Barlow's* OSHA had sought to enter business premises without a warrant even though it had provided by regulation for the method of obtaining the "necessary process." However, this question of promulgation of rules to be used in seeking a warrant was regarded by the Court in *Barlow's* as a matter of the agency's own choice. In *Barlow's* OSHA formulated *regulations* which required notice to the business operator thereby precluding by *regulation* ex parte hearings to obtain a search warrant. In *Barlow's* Justice White stated:

> Indeed, the kind of process sought in this case and apparently anticipated by the regulation provides notice to the business operator. If this safeguard endangers the efficient administration of OSHA, the Secretary should never have adopted it, *particularly when the Act does not require it.* Nor is it immediately apparent why the advantages of surprise would be lost if, after being refused entry, procedures were available for the Secretary to seek an *ex parte* warrant and to reappear at the premises without further notice to the establishment being inspected.

**3.** The conditions which Keokuk insisted be met are:

> 1) that no private interviews be conducted with employees during working hours on the plant premises;
> 2) that no personal sampling devices be attached to employees; and
> 3) that NIOSH investigators review only those records required to be kept by OSHA regulations.

**4.** The district court in its opinion required that employees be informed that compliance with the request by NIOSH representatives to wear the devices was voluntary.

*Marshall v. Barlow's, Inc., supra,* 436 U.S. at 318–320, 98 S.Ct. at 1823–1824 (emphasis added). Keokuk also ignores the language of the Supreme Court in *SEC v. Chenery Corp.,* 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). In that case the Court stated:

> [W]e did not mean to imply thereby that the failure of the Commission to anticipate this problem and to promulgate a general rule withdrew all power from that agency to perform its statutory duty in this case. * * *
>
> * * * The function of filling in the interstices of the Act should be performed, as much as possible, through this quasi-legislative promulgation of rules to be applied in the future. But any rigid requirement to that effect would make the administrative process inflexible and incapable of dealing with many of the specialized problems which arise.

*Id.* at 201–202, 67 S.Ct. at 1579–1580.

NIOSH is not precluded from seeking an inspection warrant merely because regulations relating thereto have not been promulgated.

■ In support of its assertion that even if NIOSH has the authority to seek an inspection warrant, it may not do so ex parte, Keokuk relies exclusively on cases interpreting the OSHA regulation establishing its procedure for obtaining a warrant, there being no corresponding NIOSH regulation. For the reasons stated in *Barlow's* we find these cases inapplicable here.[5]

Keokuk further contends that an existing NIOSH regulation, 42 C.F.R. § 85.6(b), is applicable here. That section provides for advance notice of the inspection to be given to employers and employees. Keokuk insists that this provision, applied by analogy to the warrant proceedings, precludes ex parte proceedings. Such reasoning not only overlooks the fact that the provision does not pertain to warrants, but blatantly ignores the immediately preceding section, 42 C.F.R. § 85.6(a), which states in part:

Advance notice will not be given when, in the judgment of the NIOSH officer, giving such notice would adversely affect the validity and effectiveness of the investigation.

■ Keokuk also argues that the administrative probable cause standard described by the Court in *Barlow's* was not met in this case. The Court stated in *Barlow's*:

> For purposes of an administrative search such as this, probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that "reasonable legislative or administrative standards for conducting an . . . inspection are satisfied with respect to a particular [establishment]."

*Marshall v. Barlow's, Inc., supra,* 436 U.S. at 320, 98 S.Ct. at 1824.

NIOSH is a research agency rather than an enforcement agency, thus evidence of specific violations is inapplicable here. Under 29 U.S.C. § 669(b) the Secretary has the authority to make inspections pursuant to section 657 in carrying out NIOSH's research function. Section 669(a)(6) permits NIOSH to make a determination as to the toxicity of any substance found in the workplace pursuant to the reasonable request of an employee representative. The request by the employee representative in this case identified certain potentially toxic substances used in the workplace and alleged that certain symptoms were experienced by employees where those substances were in use. In light of that request the conclusion that an inspection was warranted appears a reasonable one. We cannot say that legislative and administrative standards have not been met.

■ Finally, Keokuk contends that the warrant was overbroad in regard to the use of personal monitoring devices and employee interviews.

---

**5.** *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 320 n.15, 98 S.Ct. 1816, 1824 n.15, 56 L.Ed.2d 305 (1978) provides as follows:

Insofar as the Secretary's statutory authority is concerned, a regulation expressly providing that the Secretary could proceed *ex parte* to seek a warrant or its equivalent would appear to be as much within the Secretary's power as the regulation currently in force and calling for "compulsory process."

Relying on *Plum Creek Lumber Co. v. Hutton*, 608 F.2d 1289 (9th Cir. 1979) Keokuk argues that the district court had no authority to order it to permit the use of personal monitoring devices.[6]

In *Plum Creek* the Ninth Circuit Court of Appeals held that it was without authority to order an employer to permit its employees to wear dosimeters and personal air sampling devices contrary to the employer's written policy. We disagree with the court's holding in *Plum Creek*. Section 657(a)(2) provides that the inspections are to be made at the place of employment, and conducted within reasonable limits and in a reasonable manner. This court has previously found reasonable the use of personal sampling devices, *American Smelting & Refining Co. v. OSHA*, 501 F.2d 504, 514 (8th Cir. 1974). *See Marshall v. Miller Tube Corp. of America*, 6 OSHC 2042 (E.D.N.Y. 1978).

Keokuk has neither alleged nor demonstrated that the devices pose a threat to employee safety. Furthermore, testimony suggests that use of the sampling devices is safer than some alternative methods. The district court did not err in ordering Keokuk to permit its employees to wear the personal sampling devices on a voluntary basis.

Keokuk's contention that employee interviews on its premises and during working hours somehow exceeds the scope of the warrant is frivolous. The warrant expressly provides for private employee interviews in each of the work areas specified in the warrant, as authorized by section 657(a)(2).

Accordingly, we affirm the judgment of the district court.

---

6. The warrant specifically authorized "the taking of representative breathing zone and area-wide air samples." A NIOSH official testified that employee use of the personal monitoring devices was strictly voluntary. The district court found that such use was reasonable and came within the terms of the warrant and ordered that Keokuk could not prevent their use by employees.