Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Petitioner,

v.

BLUE RIDGE PRESSURE CASTINGS, INC., Respondent.

Civ. No. 81–1260.

United States District Court, M. D. Pennsylvania.

Dec. 1, 1981.

---

Marshall H. Harris, Regional Sol., U. S. Dept. of Labor, T. Timothy Ryan, Jr., Philadelphia, Pa., Matthew J. Rieder, Washington, D. C., for petitioner.

Edward H. Feege, Allentown, Pa., for respondent.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

Petitioner, the Secretary of Labor (Secretary), seeks an order holding the Respondent Blue Ridge Pressure Castings, Inc. (Blue Ridge or Respondent) in civil contempt for failure to comply with an administrative search warrant issued by U. S. Magistrate Raymond J. Durkin. The warrant was issued under the Occupational Safety and Health Act (the Act), 29 U.S.C. § 651 *et seq.* Respondent Blue Ridge has moved to quash the warrant on several grounds. A hearing and oral argument on the motions was conducted by the Court on October 20, 1981. For the reasons set forth below, we will deny Blue Ridge's motion to quash and will hold the Respondent in civil contempt of court.

On April 2, 1981, Robert Rutt, a Compliance Safety and Health Officer of the Wilkes-Barre Office of the Occupational Safety and Health Administration (OSHA), received a telephone complaint purportedly from a Blue Ridge employee alleging the existence of unhealthful conditions at the Blue Ridge plant in Lehighton, Pennsylvania. Rutt transcribed the information he received onto an OSHA complaint form (OSHA Form 7) and mailed this form to the complainant for his review and signature. On April 16, 1981, the complaint form was returned to the Wilkes-Barre OSHA Office signed by the employee. Rutt was familiar

with the workplace from a previous safety inspection he conducted there in 1976. From his observations during that inspection, Rutt concluded that the conditions identified in the employee complaint were similar to conditions he noted during that inspection. Thereafter, on June 12, 1981, Leo Carey, Area Director of the OSHA Wilkes-Barre Office, filed with the U.S. Magistrate an Application for Inspection Warrant under the Act. On that same day, the Magistrate issued the warrant on an *ex parte* basis.

On June 17, 1981, Jeffrey Reynolds, an Industrial Hygienist employed in the Wilkes-Barre OSHA Office, arrived at the Blue Ridge plant and proffered the warrant to Tim Snyder, Respondent's Plant Production Manager. Reynolds identified himself as an OSHA Compliance Officer, presented his credentials, and indicated he was there to conduct a "complaint inspection" pursuant to the warrant. After conversations with Snyder and with Blue Ridge's attorney, Edward H. Feege, Reynolds was informed that he would not be permitted to conduct the inspection authorized by the warrant. Thereafter, on July 14, 1981, the Secretary filed a Petition for an Adjudication of Civil Contempt against Blue Ridge and a Memorandum of Law in support thereof. On July 17, 1981, Respondent filed an Answer to the above petition and also filed a Motion to Quash the warrant accompanied by a supporting memorandum. Petitioner filed an Answer to the motion to quash on August 3, 1981 and a supporting brief was filed on August 10, 1981. As previously noted, a hearing was held on October 20, 1981 on the motions to hold Blue Ridge in contempt and to quash the warrant at which oral argument was presented on the issues raised by both pending civil actions. Post-hearing briefs were also subsequently filed by each party. Since the determinative issue in both these motions is the underlying validity of the warrant, we will discuss *seriatim* the various grounds advanced by Respondent in its challenge of the instant warrant.

### A. Ex Parte Inspection Warrant

■ Relying on the Third Circuit's decision in *Cerro Metal Products, Division of Marmon Group, Inc. v. Marshall*, 620 F.2d 964 (3d Cir. 1980), Blue Ridge first argues that the warrant is invalid since it was issued by the Magistrate in an *ex parte* manner, without prior notice being afforded to the Respondent. In *Cerro*, our Court of Appeals concluded that the promulgation of 29 C.F.R. § 1903.4(d), as amended in 1978,[1] was invalid because it was not done pursuant to the notice and comment provisions under the rulemaking procedures of the Administrative Procedure Act (APA), 5 U.S.C. § 553. The Court did note, however, that under the regulatory scheme envisioned by Congress "OSHA has the delegated power to issue a legislative rule on the matter . . . but chose not to." Since the decision in *Cerro*, OSHA has exercised its rulemaking power to provide the authorization for *ex parte* warrant applications. On May 20, 1980, OSHA published proposed amendments to 29 C.F.R. § 1903.4 in the Federal Register. It invited and received public comment concerning the proposed amendments and, after consideration of these comments, issued final amendments on September 26, 1980 which become effective November 3, 1980. 45 Fed.Reg. 65916–65924 (1980).[2] Therefore, this newly amended regulation, enacted in compliance with the notice and comment procedures of the APA, provides OSHA with the authority to apply to the Court or Magistrate for inspection

1. In 1978, the amended regulation read:

 (d) For purposes of this section, the term compulsory process shall mean the institution of any appropriate action, including *ex parte* application for an inspection warrant or its equivalent.

2. The pertinent part of the new regulation now provides:

 (d) For purposes of this section, the term compulsory process shall mean the institution of any appropriate action, including *ex parte* application for an inspection warrant or its equivalent. *Ex parte* inspection warrants shall be the preferred form of compulsory process in all circumstances where compulsory process is relied upon to seek entry to a workplace under this section.

warrants without prior notice to the owner of the facility to be searched. Furthermore, the fact that the Magistrate did not specifically refer to this amended regulation is of no consequence since this Court may take judicial notice of such validly promulgated federal regulations. See, *Glapion v. MS Journalist*, 487 F.2d 1252, 1255 (5th Cir. 1973); *Hughes v. Gengler*, 404 F.2d 229 (9th Cir. 1968), *cert. denied*, 393 U.S. 1085, 89 S.Ct. 870, 21 L.Ed.2d 778 (1969).

*B. Probable Cause*

The Act authorizes two types of inspections: § 8(a) [29 U.S.C. § 657(a)] inspections, which usually are done pursuant to some sort of general administrative plan, and § 8(f) [29 U.S.C. § 657(f)] inspections, which are the result of an employee complaint. *Marshall v. North American Car Co.*, 626 F.2d 320, 322 (3d Cir. 1980). In *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), the United States Supreme Court held that a nonconsensual OSHA inspection pursuant to either section 8(a) or 8(f) requires a warrant. However, the Court in *Barlow's* also held that the standard of probable cause applied in the criminal context would not be applicable to these administrative inspections.

> Probable cause in the criminal law sense is not required. For the purposes of an administrative search such as this [OSHA inspection], probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that "reasonable legislative or administrative standards for conducting an ... inspection are satisfied with respect to a particular [establishment]." *Camara v. Municipal Court*, 387 U.S. [523], at 538 [87 S.Ct. 1727, at 1735, 18 L.Ed.2d 930]. A warrant showing that a specific business has been chosen for an OSHA search on the basis of a general administrative plan for the enforcement of the Act derived from neutral sources such as, for example, dispersion of employees in various types of industries across a given area, and the desired frequency of searches in any of the lesser divisions of the area, would

protect an employer's Fourth Amendment rights. 436 U.S. at 320–21, 98 S.Ct. at 1824 (footnote omitted).

Thus, there are two alternative bases for establishing probable cause for an OSHA inspection, *i.e.*, either by showing that a specific business has been selected for a search on the basis of a general administrative plan under 8(a), or that there is specific evidence of an existing violation at the particular workplace under 8(f). See, *Marshall v. Horn Seed Company, Inc.*, 647 F.2d 96, 100 (10th Cir. 1981). Identifying the proper basis is critical since the nature of the evidence which must be presented by the Petitioner to support a probable cause determination will vary depending upon whether the inspection is sought pursuant to § 8(a) or § 8(f). This distinction was aptly explained by the Court in *Marshall v. Horn Seed, supra*:

> In the context of routine, periodic inspections of several sites randomly selected pursuant to a general legislative or administrative plan [under § 8(a)], the Court has repeatedly held that a showing of reasonableness does not depend upon a demonstration of probable cause that a particular dwelling contains violations of the regulatory standards being enforced....
>
> When a warrant is sought to conduct an inspection according to a general administrative plan, it is reasonable that the magistrate not be concerned with questions of the reliability of evidence and the probability of violation. The reasonable balance between the need to search and the threat of disruption has already been struck by the legislative and administrative guidelines.
>
> \* \* \* \* \* \*
>
> These safeguards are not built in when a search is based on a specific complaint [pursuant to § 8(f)]. In such instances, the government is not inspecting on the basis of neutral criteria derived from reasonable legislative or administrative standards. Unless it is possible to infer that the complaint was actually made and that

it has some modicum of plausibility to it, the danger of arbitrary invasions by government officials exists. . . . Without some sort of scrutiny of the reliability of the "specific evidence" serving as probable cause for the OSHA warrant, no real assessment of the need to search can be made. 647 F.2d at 100–01.

In the instant case, the Secretary has argued that probable cause has been demonstrated under both of the tests set forth in *Barlow's*. However, after reviewing the warrant application, the documents submitted by both parties, and the hearing testimony, we conclude that the present search was not part of a neutral general enforcement program under section 8(a) of the Act. Accordingly, that variety of administrative probable cause cannot support the instant warrant.

■ Under the second prong of the *Barlow's* formula, probable cause for an OSHA inspection warrant can also be founded on an indication that specific violations are taking place in a particular facility. While the governing standard in such section 8(f) inspections is less than that required in the criminal context, nevertheless, "it is incumbent upon the judicial officer who must rule on the application to determine whether there is at least a reasonable prospect, supported by some reliable information, that the violations asserted in the application for warrant are occurring on the commercial premises in question." *West Point-Pepperell, Inc. v. Marshall*, 496 F.Supp. 1178, 1183 (N.D.Ga.1980). Moreover, in determining whether this standard was satisfied in the instant case, this Court may consider only the evidence before the Magistrate at the time of application for the inspection warrant. *Burkart Randall Division of Textron, Inc. v. Marshall*, 625 F.2d 1313, 1319 (7th Cir. 1980); *In the Matter of the Establishment Inspection of Gilbert & Bennett Mfg. Co.*, 589 F.2d 1335, 1342 (7th Cir.), *cert. denied*, 444 U.S. 884, 100 S.Ct. 174, 62 L.Ed.2d 113 (1979). The pertinent portions of the Warrant Application presented to the Magistrate in this case are as follows:

4. On April 2, 1981, Robert Rutt of the Wilkes-Barre Area Office of the Occupational Safety and Health Administration received a telephone complaint from an employee of the employer identified in the caption in which the employee charged that unhealthful conditions existed at the employer's workplace. The telephone complaint was transcribed on an OSHA complaint form (OSHA Form 7) and was forwarded to the employee for review and signature. The employee signed the complaint form on April 13, 1981, and it was received in the Wilkes-Barre Area Office on April 16, 1981. A copy of the complaint is attached hereto and made a part hereof as Exhibit "A" (the employee's name has been deleted pursuant to 29 U.S.C. § 657(f) in order to preserve his confidentiality).

5. Mr. Rutt was familiar with the workplace from a lengthy safety inspection he performed in the winter of 1976 and 1977, and from his observations during that inspection, he concluded that the conditions identified in the complaint were similar to conditions he noted during that inspection.

6. As a result of Mr. Rutt's 1976–1977 inspection, the employer was notified by letter of the conditions noted, and was requested to inform OSHA of remedial steps taken to eliminate the conditions. (At that time, because of a staff shortage, and a backlog of complaints, it was not possible to schedule a follow-up health inspection.) No response was ever received from Blue Ridge indicating that the conditions were corrected. Based on the above, Mr. Rutt concluded that the information set forth in the complaint attached as Exhibit "A" is reliable, and that the conditions have persisted for quite some time, and will continue until positive action is taken to correct them.

7. The conditions complained of constitute potential violations of 29 U.S.C. § 654(a)(2) and the Safety and Health Standards enforced pursuant to the Occupational Safety and Health Act (29 U.S.C. § 651, *et seq.*, hereinafter referred to as the Act). For example, in part 4 of the

complaint form, which contains descriptions of the hazards complained of, Item H–1 constitutes a violation of 29 CFR § 1910.1000 and 29 CFR § 1910.134, and item H–2 constitutes a violation of the same standards.

 The Respondent contends that the above application is deficient in that it "contains no allegations as to what steps, if any, Mr. Rutt took to verify the identity of the caller and the accuracy of the information submitted and whether the same was part of a campaign of harassment by the Union." However, in accord with the great weight of decisional authority which has addressed the question, we find that the Magistrate was not required to consider factors bearing on the credibility or reliability of the complainant.

> Because the criminal law standard of probable cause is not required ... *Camara* and *Barlow's* do not require that the warrant application set forth the underlying circumstances demonstrating the basis for the conclusion reached by the complainant, or that the underlying circumstances demonstrate a reason to believe that the complainant is a credible person. *Gilbert & Bennett Mfg. Co., supra,* 589 F.2d at 1339.

See also, *Burkart Randall Division of Textron, Inc. v. Marshall, supra,* 625 F.2d at 1320; *Weyerhaeuser Co. v. Marshall,* 592 F.2d 373, 377 (7th Cir. 1979); *Donovan v. Metal Bank of America, Inc.,* 516 F.Supp. 674, 678 (E.D.Pa.1981); *BP Oil, Inc. v. Marshall,* 509 F.Supp. 802, 807 (E.D.Pa.1981). In any event, paragraph 5 of the Warrant Application recites that Mr. Rutt, who was familiar with the Blue Ridge plant from an earlier inspection he conducted, observed that the conditions described by the complainant were similar to ones he had observed on his prior visit. This factor, as well as the specificity of the employee complaint itself, indicates that the complainant was well acquainted with the Blue Ridge worksite. While Mr. Rutt's recollections of his previous inspection in 1976 would not alone provide sufficient evidence for a finding of probable cause, nevertheless, the Magistrate was entitled to consider this as corroboration of the recent employee complaint. *Donovan v. Metal Bank of America, Inc., supra,* 516 F.Supp. at 679 ("The history of an establishment is relevant in evaluating the basis for a warrant."); *In Re Gilbert & Bennett Mfg. Co., supra,* 589 F.2d at 1339–40 (evidence of prior investigation "supplied the magistrate with relevant and important background information.").

 In support of its argument that the Warrant Application did not establish probable cause for an inspection under section 8(f) of the Act, Respondent relies principally upon the Tenth Circuit's decision in *Marshall v. Horn Seed Company, Inc., supra.* However, after reviewing the factual circumstances of that case and the nature of the evidence presented to the judge in support of the warrant application, we find it entirely distinguishable from the matter *sub judice.* In *Horn Seed,* the application was found to be insufficient since (1) the affiant did not indicate who had received the initial telephone complaints, nor was she even sure who had; (2) the signed OSHA complaints forms were not given to the judge; and (3) the judge was not even informed if the complainants were employees. All of this information was supplied to the Magistrate in the instant case. Furthermore, the affidavit in *Horn Seed* simply stated that complaints were received and described the conditions alleged to be unsafe and unhealthful. 647 F.2d at 104. In view of the paucity of information presented in support of the warrant application, the Court was not convinced that there was "some plausible basis for believing that a violation is likely to be found." *Id.* at 102.

A review of the warrant application presented to the Magistrate in this case reveals that it is much more specific than the affidavit at issue in *Horn Seed* and, most importantly, it contains the precise information the Tenth Circuit held would be necessary in a case of this type. Specifically, it (1) stated by whom the employee complaint was received and that this OSHA official was known to the affiant; (2) it informed the Magistrate that the source of

this complaint was an employee of Blue Ridge; (3) the complaint was received in written form and was attached to the application; and (4) it set forth information regarding a previous OSHA inspection at the Blue Ridge plant and such information was utilized as a basis for verifying the allegations in the employee complaint. Therefore, we find that the instant application afforded the Magistrate sufficient factual data to conclude that a search was reasonable and that a warrant should issue. Accordingly, we hold that the warrant authorizing an inspection of the Respondent's facility was adequately supported by a finding of administrative probable cause.

## C. Overbreadth of Warrant

■ Blue Ridge next argues that the warrant issued by the Magistrate in this case authorized a search beyond the permissible limits of a section 8(f) inspection. In *Marshall v. North American Car Co.*, 626 F.2d 320 (3d Cir. 1980), our Court of Appeals rejected the contention that a "wall-to-wall" inspection may be undertaken by OSHA officials in a section 8(f) case. The Court did so by examining the language of the statutory provision itself.

... Congress refers to § 8(f) inspections as "special inspections" in the third sentence. Although the parties have cited nothing in the legislative history that would explain the meaning of this phrase and our research has revealed nothing, we believe that this term was used to distinguish § 8(f) inspections from § 8(a) inspections. The Secretary's argument, however, would convert every § 8(f) inspection into a § 8(a) wall-to-wall inspection. Because this deprives "special inspection" of any meaning whatsoever, it conflicts with the maxim of statutory construction that every word in a statute should be given meaning. *Id.* at 323.

Thus, the Court concluded:

We hold that where an OSHA inspection is conducted under § 8(f) pursuant to an employee complaint, the scope of the inspection must bear an appropriate relationship to the violations alleged in the complaint. *Id.* at 324.

Accord, *Donovan v. Burlington Northern, Inc.*, 521 F.Supp. 99, 102 (D.Mont.1981); *Establishment Inspection of ASARCO*, 508 F.Supp. 350, 353 (N.D.Tex.1981); *BP Oil, Inc. v. Marshall, supra*, 509 F.Supp. at 808; *West Point-Pepperell, Inc. v. Marshall, supra*, 496 F.Supp. at 1186–87; *Establishment Inspection of Urick Property*, 472 F.Supp. 1193, 1194–95 (W.D.Pa.1979); *contra, Burkart Randall Division of Textron, Inc. v. Marshall, supra*, 625 F.2d at 1325–26.

After a thorough review of the warrant in question here, we are satisfied that it meets the standard enunciated in *North American Car*. While its introductory language is indeed broad, nevertheless, this preliminary paragraph is qualified by the following phrase: "... the scope of such inspection being limited to conditions identified in the complaint attached hereto as Exhibit A." (Warrant, Doc. # 2, p. 3). As noted, the employee complaint was attached to the warrant and was thereby incorporated by reference into the same. Thus, the scope of the intended search of the Blue Ridge plant was effectively limited by the warrant to the areas mentioned in the employee complaint, *i.e.*, the upper and lower die cast areas of the facility.

■ Despite the presence of this limiting language in the warrant, Blue Ridge still argues that the manner in which the OSHA officials intend to execute this warrant is beyond the permissible limits of a section 8(f) inspection. Specifically, the Respondent first objects to the scope of OSHA's proposed review of its employee illness and injury records (OSHA Form 200). Blue Ridge asserts that the OSHA Compliance Officer who attempted the inspection indicated that he planned to review all of these records, and not merely those referring to the employees in the upper and lower die cast areas. The testimony at the October 20 hearing regarding this issue was apparently in conflict as to whether the Respondent categorizes the OSHA 200 Forms by locations in the plant and also whether the documents of only those employees referred to in the complaint could be made available

to OSHA by Blue Ridge. In view of the limitations inherent in a § 8(f) search, we find that the Respondent need only allow OSHA to inspect the records[3] of those employees in the upper and lower die cast areas; however, if Blue Ridge cannot effectively segregate the pertinent records of these employees from its company files, then, it must allow OSHA to examine all of the employee records referred to in the warrant.

█ Respondent next argues that OSHA should not be permitted to review the engineering controls of the Blue Ridge plant before it determines that employees are over-exposed to air contaminants in violation of 29 CFR § 1910.1000 or 29 CFR § 1910.1025. The Petitioner explained the necessity of evaluating these controls simultaneously with atmospheric sampling thusly:

" . . . [B]y evaluating engineering controls at the same time sampling is performed, the industrial hygienist is able to identify inconsistencies in sampling results which may have resulted from employees tampering with the sampling equipment or from mechanical problems with the equipment.

By examining engineering controls the industrial hygienist is also better able to determine who and where and when to sample in order to obtain representative exposures. This will likely result in reducing the number of employees who must be sampled and thus shortening the inspection. This procedure also enables the industrial hygienist to point out to the employer immediately obvious, easy to correct problems so that immediate corrective action may be taken. This insures that employees are exposed to potentially unhealthful contaminants for the shortest period of time. . . . It adds little or no additional time to the inspection to review engineering controls at the

same time as the walk-around and sampling are being done. Indeed, as noted above, knowledge of the existing engineering controls may allow the industrial hygienist to reduce the number of employees to be sampled and therefore may even reduce the time required for the inspection. If OSHA is required to withhold its evaluation of engineering controls until after it has obtained the results of sampling, it will mean that the industrial hygienist(s) must return to the plant several weeks or even months later to complete the inspection. This clearly would have prevented OSHA from completing the inspection of Respondent's plant within the ten consecutive working days permitted by the warrant. (Petitioner's Post-Hearing Memorandum, Doc. # 18, pp. 11–12).

The Respondent in its post-hearing brief does not strongly contest the Petitioner's assertions regarding this issue, nor do we believe it actually could. Simply stated, the Court finds that this method of investigation is reasonable and is one which is calculated to insure that an adequate and thorough safety inspection of the Blue Ridge facility is undertaken by OSHA. Accordingly, we hold that during the course of the upcoming inspection, OSHA may evaluate engineering controls at the same time they are investigating the possibility of over-exposure to air contaminants.

█ Blue Ridge's third overbreadth argument relates to OSHA's intention to affix personal sampling equipment upon employees to test air quality.[4] At the core of this controversy is 29 CFR § 1903.7, which provides in pertinent part:

(b) Compliance Safety and Health Officers shall have authority to take environmental samples and to take or obtain photographs related to the purpose of the inspection, *employ other reasonable investigative techniques*, and question pri-

---

3. This would include both the injury and illness records and the employee medical and exposure records referred to in the warrant.

4. The fifth paragraph of the Warrant expressly provides that: "The inspection and investiga-

tion will also include the affixing of monitoring devices upon employees to determine their exposure to airborne contaminants as is authorized by 29 CFR § 1903.7(b)."

vately any employer, owner, operator, agent or employee of an establishment. (emphasis added).

Thus, since the use of personal sampling equipment is not specifically mentioned in the above regulation, the issue now before the Court is whether this procedure can be considered an "other reasonable investigative technique." Relying upon the Ninth Circuit's decision in *Plum Creek Lumber Company v. Hutton,* 608 F.2d 1283 (9th Cir. 1979), the Respondent argues that it is beyond the power of the Magistrate to authorize the employment of such equipment. In *Plum Creek,* the Court of Appeals held that the district court did not have the inherent authority to order the employer to permit its employees to wear the testing devices. It did so, however, only because such an order would involve "forcing an employer to rescind a company policy so that OSHA can more efficiently conduct an investigation." *Id.* at 1290. Significantly, the Court in *Plum Creek* did find that the use of these air-contaminant measuring devices was a "reasonable means of inspecting." *Id.*

We need not consider the soundness of the Court's ultimate holding in *Plum Creek*[5] since we find its factual setting clearly distinguishable from the case at hand. The factor upon which the Court relied on in that case to prohibit the usage of this equipment, *i.e.,* the company policy, is simply not present in the instant circumstances. Therefore, as noted, our only inquiry is whether the utilization of personal sampling equipment is a "reasonable investigative technique." In accord with every court which has considered the question, we find that it is. See, *Matter of Keokuk Steel Castings,* 638 F.2d 42 (8th Cir. 1981); *Plum Creek Lumber Company v. Hutton, supra,* 608 F.2d at 1290; *American Smelting & Refining Co. v. Occupational Safety and Health Review Commission,* 501 F.2d 504 (8th Cir. 1974); *Marshall v. Miller Tube Corp. of America,* 6 OSHC (BNA) 2042 (E.D.N.Y.1978); *Marshall v. Rochester Shoe Tree Co., Inc.,* Misc.No. 306 (N.D.N.Y., April 4, 1981); *In the Matter of the Inspection of Cleveland Electric Illuminating Co.,* Misc.No. 80–2128 (N.D.Ohio, Feb. 27, 1981). Accordingly, this aspect of the warrant allowing the affixing of monitoring devices upon employees is not overbroad.

■ Respondent's final overbreadth challenge concerns that part of the Warrant which provides that the inspection "shall proceed for no longer than ten (10) consecutive working days." Blue Ridge contends that this is a more extensive intrusion than is necessary to accomplish the purposes of the Act. However, two factors persuade us that this temporal limitation is reasonable: (1) the detailed inspection procedure which is undertaken by OSHA in such a search, as outlined by Leo Carey at the October 20 hearing; and (2) the apparent uncertainty of each party as to precisely how long an adequate inspection may take. In view of this, we cannot say that the ten day maximum limitation is unreasonable, nor does it render the warrant overbroad.

### D. Staleness of Information

■ In its motion to quash the instant warrant, Blue Ridge asserts that the warrant should not have issued because it was based on stale information. Such a contention can be disposed of in short order since it is clearly without merit. Contrary to Respondent's assertion, the "principal reason" for the Magistrate's decision to issue the warrant on June 12, 1981 was the signed employee complaint filed April 16, 1981. After reviewing this complaint, we are of the opinion that the nature of the allegations therein were such that the Magistrate could reasonably conclude that the conditions as yet remained unabated. Therefore, the passage of less than two months between the time the employee complaint was filed and the issuance of the warrant does not render that information stale. See, *Burkart Randall Division of Textron v. Marshall, supra* (warrant based on employee complaints received approximately five and six months prior to issuance

---

5. We note, however, that the Eighth Circuit in *Matter of Keokuk Steel Castings,* 638 F.2d 42 (8th Cir. 1981) has disagreed with the reasoning and holding in *Plum Creek.*

of warrant not stale); *In the Matter of the Inspection of Central Mine Equipment Co.,* 7 OSHC (BNA) 1185 (E.D.Mo.), *vacated on other grounds,* 608 F.2d 719 (8th Cir. 1979) (OSHA warrant based on information which was eight months old valid).[6]

In sum, we have carefully considered all of Respondent's arguments challenging the validity of the June 12, 1981 Warrant and find them to be without merit. Accordingly, we find Blue Ridge to be in civil contempt of court for failing to comply with this warrant. Therefore, we will today enter an Order compelling Blue Ridge to purge itself of its contemptuous conduct by permitting inspection of its workplace, such inspection to commence on a date and time established by Petitioner. In addition, this Court will exercise its discretionary power to deny Petitioner's request for a compensatory fine against the Respondent since it is our view that Blue Ridge's challenge to the validity of the warrant was brought in good faith for other than dilatory or frivolous reasons. However, we will assess a conditional fine against Blue Ridge of five hundred dollars ($500) per day for each day it fails to comply with the terms of this Order.

---

**6.** Respondent also argues that the form of the Warrant Application is defective in that it does not contain the language of 28 U.S.C. § 1746. We reject this contention in view of the fact that this statutory provision pertains only to unsworn declarations, whereas the instant Application was sworn to by its author, Leo Carey.