**MARSHALL, Ray, Secretary of Labor, U.S. Dept. of Labor, Appellant,**

v.

**NORTH AMERICAN CAR COMPANY, N. Thomas Avenue, Sayre, Pennsylvania.**

**In the Matter of ESTABLISHMENT INSPECTION OF NORTH AMERICAN CAR COMPANY, N. Thomas Avenue, Sayre, Pennsylvania.**

**No. 79–2374.**

United States Court of Appeals, Third Circuit.

Argued May 20, 1980.

Decided July 24, 1980.

Carin A. Clauss, Sol. of Labor, Benjamin W. Mintz, Associate Sol. for Occupational Safety & Health, Allen H. Feldman, Counsel for App. Litigation, Charles I. Hadden, Acting Asst. Counsel for App. Litigation, Thomas L. Holzman (argued), Atty., U.S. Dept. of Labor, Washington, D.C., for appellant.

Mark A. Lies, II (argued), Wm. Patrick Murphy, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., Robert H. Young, Jr., Drinker, Biddle & Reath, Philadelphia, Pa., for appellee.

Before SEITZ, Chief Judge, and GIBBONS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

The Secretary of Labor appeals from an order of the district court refusing to hold North American Car Co. (the employer) in contempt for failure to comply with an inspection warrant issued pursuant to § 8(f) of the Occupational Safety & Health Act of 1970, 29 U.S.C. § 657(f) (1976) (the Act).

### I.

The employer operates a railroad car repair facility in Sayre, Pennsylvania. The Sayre plant covers an area of approximately 70 acres, about 40 of which are used to store cars awaiting maintenance, and the remainder are actual service areas. In general, cars are taken either to the F.R.A. area (short for Federal Railroad Administration) for lighter work or to the steelyard for heavier work. Work is done either outside or in separate buildings. For example, there is a steamrack, an outside area the size of four railroad cars where tankers are cleaned prior to maintenance. A variety of specialized tasks are performed in the separate buildings, including painting, wood fabrication, air brake repair, and so forth.

In early April of 1979, the Occupational Safety & Health Administration (OSHA) received a complaint from an employee at the Sayre plant who worked in the steelyard. The alleged violations of the Act covered three basic physical areas of the plant: the steamrack, an overhead crane that ran between some of the buildings, and one of the paint shops.[1]

---

1. Item 2 on the complaint required the employee to specify the area of the plant where the violations occurred. Typed in that space is: "Steel yard, present paint shop and steam rack." The portion listing violations reads as follows:

    H1. The only ventilation in the building is the doors. Employees work in tankers without safety lines or even a safety man present.

    S2. The overhead crane in the steel yard is constantly overloaded.

    S3. The take-up reel is cracked; the axle in the reel has been bent from overloading.

    S4. The track that the crane rides on is broken in many places to the extent that pieces of rail can be removed by hand.

    S5. Cracks and missing rivets in the super structure indicate metal fatigue.

    S6. The steam rack area of the plant does not have or make use of non-sparking tools on flammable or explosive tanker cars.

After the employer refused entry to OSHA inspectors, they secured a warrant from a magistrate. The application merely recited the employee complaint. There is no allegation that the employer had ever been found in violation of the Act in the past. The warrant authorized the inspectors "to enter the [employer's] premises . . . to inspect . . . the workplace or environment where work is performed by employees of the employer and all pertinent conditions, structures, machines, apparatus, devices, equipment, materials, and all other things therein (including records, files, papers, processes, controls, and facilities)."

The inspectors returned to the plant and conducted an inspection for three days. After examining safety records, they inspected the wood fabrication shop, a tool storage area, and the air brake shop. They checked both the wiring and the noise and air quality levels in some of these areas. Due to inclement weather, the inspectors did not look at the crane or the steamrack violations listed in the complaint. Some inspection activity did take place in the paint shop.

After the third day, the employer refused to permit the inspection to continue. The Secretary then made a motion in the district court to hold the employer in contempt, arguing that an inspection of the entire plant (known as a "wall-to-wall" inspection) was proper. After a hearing, the district court concluded that the warrant and the inspection as conducted were overbroad in that they were not limited to the physical areas specified in the employee complaint. *See Marshall v. North American Car Co.*, 476 F.Supp. 698 (M.D. Pa. 1979). It proceeded to enter an order quashing the warrant and dismissing the petition for contempt. This appeal followed.

S7. Many cars (tankers) are exposed to cutting torches and welding without being properly cleaned prior to placement in the yards for repair.
S8. The paint shop area presently in use is a "NO SMOKING" area, however, it is heated with an open-flame gas heater.

II.

As our recitation of the facts indicates, the scope of the inspection exceeded the areas covered by the complaint. On appeal, the Secretary's sole argument is that such a wall-to-wall search is permissible in *any* case where OSHA has received an employee complaint. Although the parties have spent considerable time arguing constitutional issues, we must first turn to the statute because if it provides a basis for affirming the district court we need not reach the constitutional questions presented.

The Act authorizes two types of inspections: § 8(a) inspections, which usually are done pursuant to some sort of a general administrative plan, and § 8(f) inspections, which are the result of an employee complaint. Only § 8(f)(1) is involved here, and it provides:

Any employees or representative of employees who believe that a violation of a safety or health standard exists that threatens physical harm, or that an imminent danger exists, may request an inspection by giving notice to the Secretary or his authorized representative of such violation or danger. [The second sentence then specifies complaint procedures.] If upon receipt of such notification the Secretary determines there are reasonable grounds to believe that such violation or danger exists, he shall make a special inspection in accordance with the provisions of this section as soon as practicable, to determine if such violation or danger exists. If the Secretary determines there are no reasonable grounds to believe that a violation or danger exists he shall notify the employees or representative of the employees in writing of such determination.

S9. Does not have non-spark electrical hook-ups.
The designation "H" or "S" refers to whether the violation is health or safety related.

The Secretary argues that this section authorizes wall-to-wall inspections in every case of an employee complaint regardless of whether the physical location of the inspection bears any relation to the physical location of the complained of violations. We read § 8(f) as requiring that the scope of an inspection must bear some relationship to the alleged violations in the employee complaint. The language of § 8(f) supports our reading in two ways.

First, the initial sentence of § 8(f) states that employees may notify the Secretary of "such violation or danger." Congress continued the use of "such violation or danger" in the third sentence. The third sentence deals with two matters: the Secretary's decision to inspect and the actual inspection that results from that decision. The Secretary is to determine if there is reasonable cause to believe that such violations exist and then conduct an inspection "to determine if such violation or danger exists." It would seem that the use of this phrase twice in the third sentence is meant to be a reference back to the initial violation brought to the Secretary's attention by the employee. Thus both the Secretary's decision to inspect and the actual purpose of the inspection are geared toward the allegations in the employee complaint. Read together, the first and third sentences of § 8(f) indicate that Congress contemplated that these inspections would bear some relationship to the employee complaint.

Second, Congress refers to § 8(f) inspections as "special inspections" in the third sentence. Although the parties have cited nothing in the legislative history that would explain the meaning of this phrase and our research has revealed nothing, we believe that this term was used to distinguish § 8(f) inspections from § 8(a) inspections. The Secretary's argument, however, would convert every § 8(f) inspection into a § 8(a) wall-to-wall inspection. Because this deprives "special inspection" of any meaning whatsoever, it conflicts with the maxim of statutory construction that every word in a statute should be given meaning. Read in conjunction with our previous discussion, a "special inspection" is one "to determine if

such violation or danger [alleged in the complaint] exists."

None of the Secretary's arguments convince us to the contrary. Initially, the Secretary relies on the language in § 8(f) that special inspections shall be "in accordance with the provisions of this section." He argues that this is a cross reference to § 8(a), which permits wall-to-wall inspections in accordance with a general administrative plan. He contends that his rule of having a wall-to-wall inspection in every employee-complaint case is a general administrative plan within the purview of § 8(a).

We believe, however, that this phrase in § 8(f) must be read in light of the structure of § 8 as a whole. That section is a carefully designed inspection provision that strikes a balance between the interests of employees and employers. For example, under § 8(d) an inspection should not be burdensome on small employers. Section 8(e) authorizes employer and employee representatives to accompany the inspector. Similarly, subsections (b) and (c) provide subpoena power to OSHA and require certain records and notices to be provided by the employer.

By focusing solely on subsection (a), the Secretary's argument misreads the meaning of "in accordance with the provisions of this section." This phrase would seem to mean that the procedures set out in the other subsections of § 8 will be followed even where the inspection is pursuant to an employee complaint. In short, Congress merely wanted to ensure that all the subsections of § 8 apply regardless of whether an inspection is conducted under § 8(a) or § 8(f).

The Secretary also points to a regulation that states that a warrant issued on the basis of an employee complaint may authorize a search that is not limited to the area in the complaint. *See* 29 C.F.R. § 1903.11. The Secretary contends that this regulation is supported by sound policy in that limited enforcement resources are better utilized if there is a wall-to-wall inspection once the inspectors have to go to the plant anyway.

Interpretations of the Act by the Secretary are entitled to deference, but the Secretary may not exceed the statutory limits imposed by Congress. Because Congress has expressed a requirement that the scope of the inspection be related to the complaint, to the extent that the regulation permits wall-to-wall inspections in every case, it surpasses the boundaries set by Congress.

Finally, the Secretary has cited numerous cases, many of which are distinguishable either because they involve § 8(a) inspections or because the scope of the § 8(f) inspection was related to the violations alleged in the complaint. *But see Burkart Randall Division of Textron, Inc. v. Marshall*, 625 F.2d 1313 (7th Cir. 1980). To the extent that any of these decisions are inconsistent with the reasoning we adopt today, we decline to follow them.

We hold that where an OSHA inspection is conducted under § 8(f) pursuant to an employee complaint, the scope of the inspection must bear an appropriate relationship to the violations alleged in the complaint. Here, the scope of the inspection exceeded the area of the complaint, and the Secretary has not attempted to argue that it bore any relation whatsoever to the violations in the complaint. Thus we need not decide the exact relationship that must exist. Moreover, there may be a complaint of such a nature that a wall-to-wall inspection is appropriate. Here, however, the Secretary has not made such an argument and we do not consider it. Accordingly, we affirm the order of the district court.

### III.

One final matter requires our attention. After the district court's order here, the Secretary issued citations against the employer based on violations discovered during the three-day search. The employer has asked us to enjoin the OSHA proceedings.

Our cases provide the dispositive answer to the employer's request. We have held that once OSHA begins citation proceedings, the proper course is for an employer to exhaust OSHA procedures and then raise contentions in an appeal from the finding of a violation. *E.g., Marshall v. Whittaker Corp.*, 610 F.2d 1141, 1148 (3d Cir. 1979). *Compare Cerro Metal Products, Inc. v. Marshall*, 620 F.2d 964, 970–71 (3d Cir. 1980). It makes no difference that we have affirmed the district court's order holding the warrant overbroad. The citation proceedings relate to the portion of the inspection completed prior to the employer's challenge, and they very well may raise different issues than we have considered here. Thus the policies underlying exhaustion that we noted in *Whittaker* are fully applicable here. Accordingly, we deny the employer's motions.

### IV.

The order of the district court will be affirmed. The employer's motions concerning the citation proceedings will be denied.