**In the Matter of Establishment Inspection of BP OIL, INC., Marcus Hook Refinery, Marcus Hook, Pennsylvania.**

**BP OIL, INC.**

v.

**Ray MARSHALL, Secretary of Labor, United States Department of Labor.**

**Misc. No. 80–270, Civ. A. No. 80–2031.**

United States District Court,
E. D. Pennsylvania.

Feb. 18, 1981.

On Motion for Reconsideration
Feb. 27, 1981.

---

Walter E. Wilson, Area Director, U. S. Dept. of Labor, Occupational Safety and Health Administration, Matthew J. Rieder,

U. S. Dept. of Labor, Philadelphia, Pa., for plaintiff.

Herman Lazarus, Alan M. Lerner, Barry R. Elson, Jeffrey Ivan Pasek, Philadelphia, Pa., for BP Oil, Inc.

Kenneth L. Oliver, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for Sun Oil Co. amicus curiae.

## MEMORANDUM

CLIFFORD SCOTT GREEN, District Judge.

Pending before this Court is the petition of the U.S. Department of Labor, Occupational Safety and Health Administration (hereinafter "OSHA") for an order to show cause and for adjudication of BP Oil, Inc. and its employee, Richard Amos, in civil contempt of court (Misc. No. 80–270). In a separate civil action (C.A. 80–2031), BP Oil has filed a motion to enjoin OSHA from executing a limited inspection warrant at its Marcus Hook Refinery in Delaware County, Pennsylvania and to quash said warrant. For the reasons stated herein the issuance of the limited inspection warrant is affirmed. BP Oil is held in civil contempt of court and BP's motion for an injunction and to quash the warrant is denied. OSHA's request to hold Richard Amos in contempt is denied.

The facts giving rise to these related actions were certified to this court by the magistrate pursuant to 28 U.S.C. § 636 and they are as follows: In early March, 1980 the OSHA office in Philadelphia received two letters from the Oil, Chemical and Atomic Workers International Union ("OCAW"), the union representatives for employees at BP Oil and Sun Oil, Inc. ("Sun"), alleging conditions at the refineries which posed an imminent danger to workers and the surrounding community. At the time OSHA received these letters employees at both companies were on strike. Based on these complaints the Philadelphia Area Director, Walter E. Wilson, applied for an *ex parte* inspection warrant

pursuant to Section 8(f), 29 U.S.C. § 657(f) [1] of the Occupational Safety and Health Act of 1970, as amended, 29 U.S.C. § 651 *et seq.*, authorizing its compliance inspectors to make an investigation of BP Oil's Marcus Hook Refinery.

On March 17, 1980 a magistrate issued an *ex parte* warrant; when the OSHA inspectors demanded entry to the refinery BP Oil refused to allow them in. OSHA then filed a petition to adjudicate BP Oil in civil contempt. BP responded with a motion to quash the inspection warrant. After oral argument the motion to quash was granted on the ground that it was issued without notice to BP notwithstanding the fact that the regulations of OSHA did not empower it to seek *ex parte* warrants. *Cerro Metals v. Marshall*, 620 F.2d 964 (3d Cir. 1980).

On March 19, 1980 the strike ended and the local union president, Stan Tussie, sent a telegram to OSHA advising it that the strike had ended and that they wanted to withdraw their complaints against BP. The OSHA Area Office contacted Mr. Tussie and told him that the agency would continue its investigation of the refinery. Subsequently, a meeting was held between OSHA's counsel and a BP employee after which the union drafted a "revised list of hazards". This new list served as the basis of OSHA's second application for a warrant. On March 28, 1980 OSHA filed a new application for an inspection warrant which in substance was identical to the one filed on March 17, 1980. After a full hearing on April 11 and 21–24, 1980 before a magistrate, the magistrate entered a memorandum and order on May 20, 1980 granting in part OSHA's application. A limited inspection warrant was subsequently issued on May 28, 1980. On the same day, OSHA compliance officers presented the warrant to BP's employees at the refinery, but as with the *ex parte* warrant, they were denied entry to the plant. In refusing to admit the OSHA compliance officers to the plant, Mr. Richard Amos, BP's Industrial Relations Manager, read to the group a statement prepared by BP's corporate counsel which stated that the warrant would not be honored because the question of the warrant's validity was being appealed. The OSHA inspectors then left the refinery. On May 28, 1980, BP filed a motion to stay the May 20th order pending appeal. This motion was denied by the magistrate without prejudice with leave to appeal to this court. The motion was also denied here on May 30, 1980.

On June 3, 1980, pursuant to 28 U.S.C. § 636, the magistrate filed a certification of facts. OSHA then filed in this court petitions for the issuance of a rule to show cause why BP should not be held in civil contempt. BP answered with a memorandum in opposition to OSHA's motion and with a motion to quash the warrant. Also, BP filed a new civil action (C.A. 80–2031) seeking to enjoin execution of the warrant. The parties agree this latter civil suit and the petitions to quash and for an adjudication of civil contempt raise identical facts and questions of law. A hearing was held on December 5, 1980 on the motions to hold BP in contempt and to quash the warrant

---

1. Section 8(f)(1), 29 U.S.C. § 657(f)(1) reads:

Any employees or representative of employees who believe that a violation of a safety or health standard exists that threatens physical harm, or that an imminent danger exists, may request an inspection by giving notice to the Secretary or his authorized representative of such violation or danger. Any such notice shall be reduced to writing, shall set forth with reasonable particularity the grounds for the notice, and shall be signed by the employees or representative of employees, and a copy shall be provided the employer or his agent no later than at the time of inspection, except that, upon the request of the person giving such notice, his name and the names of individual employees referred to therein shall not appear in such copy or on any record published, released, or made available pursuant to subsection (g) of this section. If upon receipt of such notification the Secretary determines there are reasonable grounds to believe that such violation or danger exists, he shall make a special inspection in accordance with the provisions of this section as soon as practicable, to determine if such violation or danger exists. If the Secretary determines there are no reasonable grounds to believe that a violation or danger exists he shall notify the employees or representative of the employees in writing of such determination.

at which oral argument was presented on all the issues presented by both pending civil actions.

## I.

One of BP's primary contentions in its challenge to the validity of the inspection warrant is that the warrant was not supported by probable cause. The two components of this argument are that the magistrate failed to make an independent determination of probable cause and that the evidence does not support a finding that there was probable cause to believe OSHA violations existed at the refinery where the warrant was directed. If probable cause was lacking BP may successfully assert this fact in support of its motion to quash and as a defense to a citation for civil contempt. *Weyerhaeuser Co. v. Marshall*, 592 F.2d 373 (7th Cir. 1979).

■ BP argues correctly that the Fourth Amendment requires a neutral and detached magistrate to make an independent determination of the evidence presented in support of issuance of a search warrant for that warrant to be valid. Citing *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) and *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), BP argues that since the magistrate did not consider the source of the complaints or the reliability or credibility of the complaints, he could not have made an independent determination of probable cause. In support of its argument BP quotes passages from the magistrate's Memorandum and Order, dated May 20, 1980, which it contends shows that he applied the wrong standard of review. However, a fair reading of the record in proper context, including the magistrate's very thorough memorandum opinion, reveals that BP received a more extensive hearing than required in this type of application for an inspection warrant. The magistrate here conducted a hearing for a total of five days at which he permitted each party to examine the witnesses and he carefully analyzed the testimony of each witness, he carefully ferreted out testimony as to possible conditions that still existed and those which had been abated in "the revised list of hazards" on which the second application, dated March 28, 1980, was based. Thus, an independent determination was made that probable cause existed for the issuance of the inspection warrant by a neutral and detached magistrate.

■ The second component of BP's argument is that the determination made by the magistrate was not supported by probable cause in that the record fails to establish that at the precise time the warrant was issued there were continuing OSHA violations in existence at the refinery. Clearly, the law does not require such specificity for an administrative search warrant. Indeed, the standards applied to warrants in criminal investigations are not applicable. This is clear from a reading of Justice White's opinion in *Marshall v. Barlow's*, 436 U.S. 305, 320, 98 S.Ct. 1816, 1824, 56 L.Ed.2d 305 (1978).

Whether the Secretary proceeds to secure a warrant or other process, with or without notice, his entitlement to inspect will not depend on his demonstrating probable cause to believe that conditions in violation of OSHA exist on the premises. Probable cause in the criminal law sense is not required. For purposes of an administrative search such as this, probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that 'reasonable legislative or administrative standards for conducting an ... inspection are satisfied with respect to a particular [establishment].' (Citations omitted).

The "revised list of hazards", plus the evidence presented at hearing on which the magistrate relied in issuing the second warrant, provides sufficient particularization for a factfinder (the magistrate) to infer that these conditions create an imminent danger of harm to workers and the community.

■ Further, since administrative searches need not satisfy criminal probable cause standards there is no need for the

magistrate to test the reliability of the employees making the complaints.

Because the criminal law standard of probable cause is not required ... *Camara* and *Barlow's* do not require that the warrant application set forth the underlying circumstances demonstrating the basis for the conclusion reached by the complainant, or that the underlying circumstances demonstrate a reason to believe that the complainant is a credible person. Nor is there a requirement that the application request be supplemented with a detailed, signed employee complaint. Complainants' names may be deleted from complaints in order to protect them from employer harassment. *See, e. g.,* 29 U.S.C. § 657(f)(1); 29 CFR § 1903.-11(a). *In the Matter of the Establishment Inspection of Gilbert & Bennett Mfg. Co.,* 589 F.2d 1335, 1339 (7th Cir. 1979).

■ After a full hearing the magistrate determined that the employee complaints and the Secretary's investigation adequately supported the Secretary's determination that there existed reasonable grounds to believe that violations existed. The magistrate also independently determined that on the record before him there was probable cause to issue an inspection warrant. In this regard the magistrate in his memorandum states:

I do not construe Mr. Wilson's testimony to mean that he proceeded to apply for the inspection warrant on a bare assumption of the existence of violations at B.P.'s refinery. Because, for whatever assumptions he might have made as to the accuracy of the complaint letters and the "revised list of hazards", he gave ample testimony of his efforts to validate those assumptions. His review of the complaint letters and the "revised list of hazards" with his staff; his review of OSHA's previous case history with B.P., in particular, and with refineries, in general, and his discussions with individual B.P. employees about their complaints provided him with the factual background giving rise to his belief that the

violations exist. At the hearing testimony was produced by some of B.P.'s employees detailing the conditions of which they had personal knowledge and which they alleged constituted dangerous conditions at the refinery. In addition, Mr. Wilson testified in detail and at great length specifying the statutory or OSHA regulations violated by each of the conditions specified in the "revised list of hazards." Accordingly, a sufficient factual basis was presented to permit me to find, as I do, the existence of probable cause to authorize the issue of a warrant for the inspection of B.P.'s refinery.

Magistrate's Memorandum and Order, May 20, 1980 at 14.

Finding adequate evidentiary support in the record for the magistrate's factual and legal conclusions, I hold that his findings were not clearly erroneous or contrary to law and there was sufficient factual evidence to find that probable cause existed for the issuance of an inspection warrant. On independent review of the record I reach the same determination as the magistrate.

## II.

■ BP contends that the warrant as issued herein was overbroad in contravention of the fourth amendment's requirement because "the warrant fails to particularize the place to be searched. The fault of the warrant is that while it authorizes the inspectors to look only for certain specified violations, it authorizes them to go anywhere and everywhere in the refinery ... in search of those violations." Brief of BP Oil at 36. I reject BP's argument in view of the fact that the magistrate carefully tailored the warrant to correspond to areas in the "revised list of hazards" where the evidence at hearing had shown that there were reasonable grounds to believe that a dangerous condition still existed. The defendant complains that despite the more narrow scope of the warrant it is still defective because the inspectors do not know, for example, which five monitors are leaking and where there is oil on the ground. In other words, the warrant fails

to give the precise location and identity of every alleged violation. Most recently, the Third Circuit has articulated the standard for the scope of an employee complaint based inspection warrant as:

> We hold that where an OSHA inspection is conducted under § 8(f) pursuant to an employee complaint, the scope of the inspection must bear an appropriate relationship to the violations alleged in the complaint.... Thus we need not decide the exact relationship that must exist. Moreover, there may be a complaint of such a nature that a wall-to-wall inspection is appropriate. *Marshall v. North American Car Co.*, 626 F.2d 320, 324 (3d Cir. 1980).

In *North American Car Company, supra,* the Third Circuit found that the warrant issued did not in fact bear the appropriate relationship to the violations; however, the standard adopted requires only that the authorized inspection bear "an appropriate relationship to the violations", *supra* 626 F.2d at 324; the precise limitation urged by BP is not required. Here, the warrant issued is not as broad as the warrant requested by the Secretary and it bears an appropriate relationship to the alleged violations.

### III.

BP seeks to quash the warrant on the ground that it was "the product of OSHA's improper involvement in a labor-management dispute." The second OSHA application was supported by "the revised list of hazards" which was compiled after the labor dispute had ended and the employees had gone back to work thereby regaining their statutory power under Section 8(f) to make complaints. It is immaterial whether or not the initial investigation of the refinery began while the strike was in progress because the Act, § 8(f)(1), requires only that a person having the status of an employee or an organization having the power to act as a bargaining representative initiate the complaint. Here, both those requirements were satisfied when the strike ended. The evidence presented at the hearing does not disclose any improper activity on the part of OSHA to encourage or aid the employee strike or to harass the company. Therefore, I do not find that OSHA was motivated by bad faith in seeking the warrant in light of the fact that the revised list of hazards provided the Secretary with a reasonable basis to believe that violations existed at the plant.

### IV.

BP's final argument is that the magistrate denied it a fair hearing. Essentially BP's argument is that since it was entitled to notice of an application for a warrant under *Cerro Metals v. Marshall, supra,* it is also entitled to a full trial of all the issues relevant to the question of whether it is in violation of the Occupational Safety and Health Act, *supra* ; rather, than a hearing simply on the limited right to object to the issue of a warrant because of lack of probable cause. I have reviewed BP's contentions but do not further discuss them here as in my view the authorities heretofore cited make clear that no such full trial right exists.[2]

### V.

OSHA seeks to have BP's industrial relations manager, Richard Amos, individually held in contempt. The evidence discloses that Amos merely read the prepared statement of counsel to the OSHA inspectors which resulted in their leaving the refinery without accomplishing an inspection. Further, there is no evidence to rebut the inference that Amos was merely performing a service for the corporation. *See Mauk v. Wright,* 367 F.Supp. 961 (M.D.Pa.1973). Therefore, I do not find that Robert Amos has committed any contemptuous act for which he would be individually liable;

2. The trial rights asserted by BP are the right to take full discovery prior to the hearing, the right to produce evidence without limitation as to whether a violation of the Act in fact existed in the plant at the time of the hearing and the right to sequester witnesses pursuant to Fed.R. Evid. 615 notwithstanding that Fed.R.Evid. 1101(d)(3) classifies proceedings involving search warrants as the type of miscellaneous proceeding to which the rules do not apply.

therefore, I deny OSHA's motion in that regard.

## ON MOTION FOR RECONSIDERATION

Pending before this Court is the motion of BP Oil, Inc. ("BP") for reconsideration, or in the alternative for a stay of this Court's Order dated February 18, 1981. In the aforementioned Order, BP's motion to enjoin the execution of and to quash the warrant of inspection issued by a magistrate on May 28, 1980 was denied. The Occupational Safety and Health Administration's ("OSHA") motion to adjudicate a BP employee, Richard Amos, in civil contempt was denied and its motion to find BP Oil, Inc. in civil contempt was granted. I also ordered BP to pay OSHA $530 for its litigation expenses and the company was ordered to make arrangements for an inspection of the refinery designated in the administrative search warrant within seven days of the date of the Order.

On February 24, 1981 BP filed this motion and through its counsel, Alan Lerner, Esq., advised the Court that BP desired a conference, including OSHA counsel, to discuss the motion. Mr. Lerner also informed the Court that he believed that OSHA would not respond to the motion before the conference. I denied counsel's request for a conference and entered an Order dated February 24, 1981 requiring OSHA to file its response to the motion, if any, within 48 hours. The Order was read over the telephone to Mr. Lerner and to Mr. Michael Shapiro, regional counsel for OSHA. OSHA duly filed its response and I have considered the motion and the response.

I find that BP's motion has presented no new controlling law or additional evidence to require this case to be reargued or reheard. To grant reargument would allow BP to merely replough the same well-furrowed ground.

In the alternative BP argues that it is entitled to a stay of the order pending appeal of the search warrant because "[p]etitioner believes that the warrant was issued in violation of the Constitution and laws of the United States and the rights of Petitioner and that it will be irreparably harmed if required to permit the execution of said warrant" and

12. Since the date of the argument of this case before the District Court, the Court of Appeals for the Third Circuit has decided the case of *SEC v. Wheeling-Pittsburgh Steel Corporation,* 648 F.2d 118 (1981), in which it acknowledged, for the first time, the propriety of quashing an administrative subpoena when to enforce the subpoena would be an abuse of the Court's process, and to permit the party opposing the subpoena to take discovery to establish its claim of administrative bad faith or abuse of the Court's process. Both such claims were made by BP in the instant matter and rejected by the magistrate and by the Court.

13. In light of this very recent development, BP respectfully moves this Honorable Court to reconsider and permit re-argument of this matter.

14. Because its desire to appeal is based upon its good faith belief, based in turn on substantial reasons appearing of record, and in the absence of any imminent, or even likely, danger to any person, from any matter for which OSHA has been authorized to inspect the refinery, Petitioner should not be prejudiced by being forced to choose between surrendering its claim and permitting the execution of the warrant or incurring the risk of substantial additional liability while it litigates its claim in the appellate courts.

Paragraphs 11, 12, 13, 14 of BP Oil's Motion for Reconsideration and Reargument, Or In the Alternative For a Stay on Behalf of BP Oil, Inc.

Various subsections of Fed.R.Civ.P. 62 govern the granting of stays pending appeal of a final judgment. Fed.R.Civ.P. 62(c) states in pertinent part:

When an appeal is taken from an interlocutory or final judgment granting, dissolving, or denying an injunction, the court in its discretion may suspend, modify, restore, or grant an injunction during

the pendency of the appeal upon such terms as to bond or otherwise as it considers proper for the security of the rights of the adverse party.

It is the burden of the party seeking the stay of a judgment order to show: "(1) that it will likely prevail on the merits of the appeal, (2) that it will suffer irreparable injury if the stay is denied, (3) that other parties will not be substantially harmed by the stay, and (4) that the public interest will be served by granting the stay." *Halderman v. Pennhurst State School & Hospital*, 451 F.Supp. 233, 235 (citations omitted). Therefore, the determination of this motion requires this court to balance these four factors. *Id.*

After careful review of the record, the pending motion and the government's response thereto, I deny BP's motion to stay the order permitting execution of the search warrant. I do not find that BP is likely to succeed on appeal because in entering the Order of February 18, 1981, I considered BP's primary contentions which are the linchpins of its position here; that is that OSHA acted in bad faith in seeking a search warrant and that there was not sufficient probable cause contained in OSHA's application for the magistrate to issue a warrant. In resolving BP's motion to enjoin execution of the inspection warrant, *inter alia*, I specifically found that

[t]he evidence presented at the hearing does not disclose any improper activity on the part of OSHA to *encourage or aid the employee Strike or to Harass the company*. Therefore, *I do not find that OSHA was motivated by bad faith* in seeking the warrant in light of the fact that the revised list of hazards provided the Secretary with a *reasonable basis to believe* that violations existed at the plant. *In the Matter of Establishment Inspection of BP Oil, Inc.*, Misc. No. 80–270 (E.D.Pa. February 18, 1981), at 10. (emphasis added.)

The only new allegation is BP's assertion that the Third Circuit's decision in *SEC v. Wheeling-Pittsburgh Steel Corp.*, 648 F.2d 118 (3d Cir. 1981) requires a change in this result. At the time of writing the memorandum that was filed with the Order of February 18, 1981, I did not doubt the power of the court to permit discovery in order to prevent abuse of the Court's process. However, as the memorandum makes clear there is not even a minimal showing of such abuse in this case and accordingly, no such right of discovery exists. The court in *Wheeling-Pittsburgh* permitted the defendant some discovery because of the extraordinary fact situation suggesting a possible abuse of court process.

Nor is there any basis for finding that BP would suffer irreparable injury, the motion makes this bald assertion without more and it is difficult to imagine how this could be so in view of the fact that BP asserts that the refinery is in complete compliance with the OSHA regulations. Further, after the inspection BP has the right to contest any citations assessed against it before the independent Occupational Safety and Health Review Commission and it may, as it asserts it intends to do, appeal this Court's Order.

BP contends that OSHA will not be substantially harmed if the stay is granted because "at no time since this matter was brought to the District Court ... has OSHA claimed that time was of the essence or that the matter needed to be expedited for any reason." Paragraph 10 of BP Oil's Motion for Reconsideration and Reargument, Or In the Alternative For a Stay on Behalf of BP Oil, Inc. This argument obviously shows that BP has ignored the very purpose of the Occupational Safety & Health Act of 1970, as amended, 29 U.S.C. § 651 *et seq.* which is to protect employees from hazardous working conditions. Implicit in that purpose is that time is always important in these cases.

Finally, I do not find that the public interest will be served by granting the stay. It is in the public interest to allow the Secretary to make such an investigation to protect the health and safety of the BP employees. BP assures the court that it will promptly proceed with an appeal, which I am certain it will do. However, the

fact that BP disagrees with this Court's Order and that it has the resources to fully litigate the matter on appeal is no reason to grant a stay. On balance, I must reject BP's arguments and deny the motion for a stay.