Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Plaintiff-Petitioner,

v.

The METAL BANK OF AMERICA, INC., Defendant-Respondent.

In the Matter of Establishment Inspection of The METAL BANK OF AMERICA, INC.

Misc. No. 80–0353.

United States District Court, E. D. Pennsylvania.

June 17, 1981.

---

Mark V. Swirsky, U. S. Dept. of Labor, Pittsburgh, Pa., for plaintiff-petitioner.

Robert D. Moran, Vorys, Sater, Seymour & Pease, Washington, D. C., for defendant-respondent.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

### I.  Introduction

The Secretary of Labor (Secretary) seeks an order holding the Metal Bank of Ameri-ca, Inc. (Metal Bank) in civil contempt of court for Metal Bank's failure to comply with a search warrant issued by Magistrate Edwin E. Naythons. Metal Bank has moved to quash the warrant. For the reasons which follow, I will deny Metal Bank's motion to quash and will hold Metal Bank in civil contempt of court.

### II.  Defendant's Motion to Quash Warrant

On April 20, 1980, Walter Wilson, Area Director of the Philadelphia Area Office of the Occupational Safety and Health Administration (OSHA) applied to Magistrate Naythons for a warrant to inspect Metal Bank for occupational health and safety violations. Magistrate Naythons conducted an adversary hearing [1] on the application on May 6 and May 7, 1980. Counsel for Metal Bank appeared and cross examined witnesses presented by the Secretary.

Magistrate Naythons found that the Secretary had shown "that reasonable legislative and administrative standards [had] been satisfied with respect to the selection of [Metal Bank] for inspection," under the Occupational Safety and Health Act (the Act), 29 U.S.C. § 651 *et seq.*, and "reasonable grounds to believe that hazardous and unhealthful working conditions exist at [Metal Bank]." *In Re Metal Bank of America, Inc.*, Misc. No. 80–0353 (E.D.Pa., May 7, 1980) (order granting warrant for inspection). He therefore signed the warrant authorizing designated OSHA representatives to enter Metal Bank's premises

during regular working hours or at other reasonable times, and to inspect and investigate in a reasonable manner and to a reasonable extent (including but not limited to the taking of photographs and samples, and the questioning privately of any owner, operator, agent, employer or employee of the establishment), those areas of the workplace covered by the employee complaint, those areas involved in the affirmed items of the January 26,

---

1. At the time of the hearing, the Third Circuit did not allow OSHA to seek *ex parte* search warrants. Instead it held that the then-valid OSHA regulations required a magistrate to hold an adversary hearing to determine the reasonableness of issuing a search warrant. *Cerro Metal Products v. Marshall*, 620 F.2d 964 (3d Cir. 1980). The May 1980 hearing will be referred to as the warrant hearing.

1979 Citations, and any area in the establishment in which there is occupational exposure to lead and copper. Within said areas, the inspection may extend to all pertinent conditions, structures, machines, apparatus, devices, equipment, materials, and all other things therein (including records, files, papers, processes, controls, and facilities) bearing on whether this employer is furnishing to its employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical injuries to its employees, whether this employer is complying with the Occupational Safety and Health Standards promulgated under the Act and the rules, regulations, and orders issued pursuant to the Act, and whether this employer has corrected violations which were required to be corrected by final order of the Occupational Safety and Health Review Commission. *Id.* The warrant authorized the inspection to begin within five working days and to continue for up to ten working days.

Magistrate Naythons considered both the warrant application and the evidence presented at the warrant hearing[2] in finding the warrant justified. Two reasons for the inspection were set forth in the warrant application. OSHA cited Metal Bank for safety violations on January 26, 1979, as a result of an inspection conducted between November 29, 1978 and January 10, 1979. OSHA sought this warrant to conduct an inspection to determine if those violations had been corrected. In addition, OSHA received two informal telephone complaints charging unsafe conditions at Metal Bank. On November 8, 1979, an anonymous caller, identifying himself as a Metal Bank employee, charged that Metal Bank employees were being exposed to lead and copper fumes without adequate ventilation. On February 1, 1980, a person identifying himself as a physician of a Metal Bank employee telephoned OSHA. The physician stated that he had treated the employee for lead poisoning, and that the employee had told him that many other Metal Bank employees had sought such treatment from other doctors. The physician did not give his name to OSHA.

At the warrant hearing, Area Director Wilson testified that his decision to inspect Metal Bank was also based on the 1977 health referrals of safety staff inspectors who had previously inspected Metal Bank, and on OSHA's experience in enforcing the revised lead standard, 29 C.F.R. § 1910.1025, *et seq.*

Metal Bank argues that the warrant was invalid because there was no probable cause, in the criminal law sense, for its issuance. The warrant clause of the fourth amendment applies to commercial buildings. *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). A warrant is required for OSHA to inspect without the consent of an employer. The warrant, however, need *not* be supported by the probable cause required in criminal cases. *Id.* at 320, 98 S.Ct. at 1824. *Barlow's* dealt explicitly with general administrative inspections under section 657(a) of the Act, but its holding applies to warrants to investigate specific complaints as well. *Burkhart Randall Division of Textron, Inc. v. Marshall*, 625 F.2d 1313 (7th Cir. 1980); *B.P. Oil, Inc. v. Marshall*, 509 F.Supp. 802 (E.D.Pa.1981).

The criminal standard is not imposed even though the Act provides for some criminal sanctions. *See, e. g.*, 29 U.S.C. § 666(e)–(g). Metal Bank raises the specter of criminal sanctions here as a basis for its argument that criminal probable cause must support this warrant. But OSHA has petitioned for civil, not criminal contempt. The stated purpose of the inspection was

---

**2.** At the warrant hearing Metal Bank argued that Magistrate Naythons was restricted to finding reasonable basis for an inspection on the basis of the warrant application alone. This position is logically inconsistent with the purpose of the adversary hearing required by

*Cerro Metal Products, supra*, 620 F.2d at 964. Magistrate Naythons was entitled to consider all the evidence before him in making his determination. *See Marshall v. Weyerhauser*, 456 F.Supp. 474 (D.N.J.1978).

civil, not criminal. If OSHA attempts to use evidence gathered under this administrative warrant in a criminal proceeding against Metal Bank, Metal Bank then can move to suppress the evidence for want of probable cause in the criminal sense. *See Marshall v. Rochester Shoe Tree Co.*, Misc. No. 306 (N.D.N.Y. Apr. 4, 1981).

■ The parties dispute whether the basis of the warrant is a general administrative plan under section 657(a) or allegations of specific existing violations. OSHA cites both as grounds for the inspection. Ordinarily the distinction is important because it determines the appropriate scope of the search. *Marshall v. North American Car Co.*, 626 F.2d 320 (3d Cir. 1980). Because the scope of this warrant is reasonably related to the allegations of specific violations, *id.*, I need not determine if section 657(a) properly supported its issuance.

Magistrate Naythons found reasonable grounds to believe that hazardous and unhealthful working conditions exist at Metal Bank. Thus, issuance of the inspection warrant was reasonable unless Magistrate Naythons' factual conclusion was clearly erroneous or contrary to law. *See B.P. Oil, supra*, 509 F.Supp. at 807. The evidence— the affirmed citations, the referrals, and the complaints—sufficiently support his conclusion.

The Seventh Circuit has found an inspection warrant valid where it was requested to follow up on an earlier inspection which revealed OSHA violations. *Pelton Casteel, Inc. v. Marshall*, 588 F.2d 1182 (7th Cir. 1978). In *Pelton*, probable cause for a follow up inspection was found even though the employer had moved the site of the work place since the time of the earlier inspection.

■ Magistrate Naythons did not err in considering the informal complaints of the anonymous employee and physician. Metal Bank incorrectly argues that these complaints could not be considered because they do not meet the criteria of formal complaints under section 657(f) of the Act. Section 657(f) sets forth criteria of complaints which require action by OSHA. The section does not prohibit OSHA from investigating less formal complaints where a reasonable basis for an inspection is otherwise established. *See Marshall v. Horn Seed Co.*, 647 F.2d 96, at 100 n.3 (10th Cir. 1981); *Burkhart Randall, supra*, 625 F.2d at 1321.

OSHA provided full information on the complaints to Magistrate Naythons. Evidence of the nature of the alleged violations was set forth in the exhibits attached to the warrant application. These exhibits and the testimony at the hearing enabled Magistrate Naythons to evaluate independently the need for an inspection of Metal Bank's premises. *Compare Plum Creek Lumber Co. v. Hutton*, 608 F.2d 1283 (9th Cir. 1979) (specific nature of violations provided to magistrate) *with Weyerhauser Co. v. Marshall*, 592 F.2d 373 (7th Cir. 1979) (magistrate given no clue as to nature of alleged violations where warrant applications merely gave "unrelieved boiler plate" recitation of statute). This independent determination satisfies the requirements of the Warrant Clause as it relates to administrative searches. *Barlow's, supra*, 436 U.S. at 307, 98 S.Ct. at 1818.

■ The magistrate was not required to consider "factors bearing on the credibility of the unidentified complaint" *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) require in the criminal context. *Weyerhauser, supra*, 592 F.2d at 377. *See also B.P. Oil, supra*, 509 F.Supp. at 807.

Even in *Horn Seed, supra*, at 103, which held that magistrates must consider the reliability of complaints, the court explicitly declined to use the criminal *Aguilar/Spinelli* test. Instead, *Horn Seed* held that there must be some basis for believing that the complaint actually was made, was sincere, and was plausible. The magistrate should be told who received the complaint, the source of the complaint, and whatever underlying facts and surrounding circumstances were available to OSHA. OSHA provided Magistrate Naythons with this in-

formation. Full copies of OSHA's memoranda of the telephone complaints were attached as exhibits to the warrant application. The OSHA representative receiving the employee complaint testified at the warrant hearing. *Cf. In re Cargill, Inc.,* Misc. No. 175 (N.D.Tex. Mar. 18, 1981) (warrant based on uncorroborated employee complaint should issue despite OSHA's failure to investigate source, and despite lapse of 102 days between receipt of complaint and warrant application).

Metal Bank argues that the 1977 referrals and the 1979 citations are stale evidence which cannot support the warrant since they predate the decision to inspect by more than six months. It relies on section 658(c) of the Act which establishes a six month time limit for issuance of *citations* following inspections or investigations. However, the statutory provision governing timing of *inspections* sets no specific time limit. Rather it requires the Secretary to inspect "at reasonable times," section 657(a), or "as soon as practicable" after receipt of a complaint, section 657(f).

The Secretary attempted to inspect Metal Bank in December, 1979, nine months after the correction date on the 1979 citations, and within one month after receipt of the November 8, 1979 employee complaint. The OSHA Field Operations Manual (FOM) calls for follow up inspections within seven days of the correction date in the citation. OSHA Field Operations Manual, Chapter V, § F, Government Exhibit C. The FOM also contemplates later follow up inspections, however. *Id.*

■ I need not decide if the 1977 referrals and/or the 1979 citations alone are too stale to support the warrant. Magistrate Naythons was entitled to consider them as corroboration of the recent complaints. The history of an establishment is relevant in evaluating the basis for a warrant. *Compare Pelton Casteel, supra,* 588 F.2d at 1182 (1977 citations are reasonable basis for 1978 warrant for follow up inspection) *with In re Urick Property,* 472 F.Supp. 1193 (W.D.Pa.1979) (history of violations a factor but insufficient to justify selection for administrative plan search where histories of comparable establishments not given to magistrate).

I am disturbed by the delays evident in this investigation. It is unfortunate that OSHA's backlog is too great for it to follow its own guidelines on follow up inspections. If violations exist at Metal Bank, then the Act's purpose—guaranteeing a safe working environment for every working person—is being thwarted by these delays. However, it was not unreasonable for Magistrate Naythons to find that the cited violations might still remain at Metal Bank despite the stipulation of correction signed by Metal Bank in June 1979. *See Burkhart Randall Div., supra,* 625 F.2d at 1322 (six month old information not stale where "the conditions alleged in the employee complaints are not of a type that will likely disappear through mere passage of time").

■ In the issuance of administrative warrants "reasonableness is ... the ultimate standard." *Horn Seed, supra,* at 100, *quoting Camara v. Municipal Court,* 387 U.S. 523, 539, 87 S.Ct. 1727, 1736, 18 L.Ed.2d 930 (1967). The scope of the warrant here was reasonably related to the complaints and citations on which it was based. It specifically authorized OSHA to inspect areas of the work place covered by the employee complaint and the affirmed citations from the earlier inspection, and areas of occupational exposure to lead and copper. The warrant does allow broad investigation of these areas; this includes private employee interviews and investigation of relevant records. However, the relationship between the scope of the warrant and the violations alleged is clear and reasonable. *North American Car, supra,* 626 F.2d at 320. The warrant is valid under the Act, and the Constitution. I will deny the motion to quash it.

### III. Petition for Adjudication of Contempt

On May 9, 12, and 13, 1980, four OSHA representatives inspected Metal Bank under the warrant. OSHA claims that Metal Bank impeded the inspection as follows:

a. Investigation of areas of occupational exposure to copper was not permitted.

b. Private employee interviews on [Metal Bank's] premises were not permitted.

c. [Metal Bank] failed, upon request by the inspectors, to make available for inspection records required by the Occupational Safety and Health Standard regarding exposure to lead, 1910.1025 *et seq.*, the "lead standard," (*e. g.* monitoring records regarding airborne exposure to lead).

d. The inspectors were not permitted to inspect shower facilities, lunchrooms and change rooms provided for employees exposed to lead.

Affidavit of Walter E. Wilson, filed February 23, 1981. Metal Bank has stipulated that "b" and "d" are true.

### A. Copper Areas

The warrant provided for inspection of areas of occupational exposure to copper. Metal Bank contends that the Secretary did not establish that it impeded the inspection of copper processing areas. It relies on the contempt hearing [3] testimony of James Johnson, one of the four OSHA inspectors. Johnson testified that he did not see the copper areas but could not state conclusively that none of the other inspectors saw the copper area. It further relies on the affidavit of Philip Levin, chief operating official of Metal Bank, which states that he informed the four OSHA representatives that there was no smelting of copper at Metal Bank; and that he showed them where the copper scrap was being briquetted. Levin did not testify at the contempt hearing.

Johnson testified that Levin took exception to the copper aspect of the warrant and would not allow inspection of the copper area. Johnson then called the OSHA Area Office for guidance, and was told to proceed as far as possible with the inspection without making a major issue out of the copper dispute. Levin was not available for cross examination on the extent of his coopera-

tion with or inhibiting of the inspection of the copper processing areas.

■ Metal Bank does not now contend that inspection of the copper area should be forbidden. I will order OSHA to reinspect this area of the Metal Bank premises. If Metal Bank is right that the area has already been inspected, there will be no greater invasion of its privacy interest by reinspection. *See Pelton Casteel, supra,* 588 F.2d at 1182.

### B. Private Employee Interviews

The warrant allows the OSHA representatives to interview privately Metal Bank's employees in a reasonable manner and to a reasonable extent. *Cf. Marshall v. Wollaston Alloys, Inc.,* 479 F.Supp. 1102 (D.Mass. 1979) (private employee interviews are clearly authorized by the statute and regulations; however, employer not in contempt where warrant did not explicitly authorize such interviews, and thus gave insufficient notice to employer). Metal Bank argues that private employee interviews during working hours on Metal Bank's premises violate the Constitution by depriving Metal Bank of property without due process of law. It also relies on section 657(e) of the Act which guarantees to both employer and employee representatives the right to accompany OSHA representatives during physical inspections.

■ Metal Bank's due process argument was raised and called untenable in *Rochester Shoe Tree, supra,* slip op. at 10. "The fundamental requirement of due process is the opportunity to be heard and it is an 'opportunity which must be granted at a meaningful time and in a meaningful manner.'" *Parratt v. Taylor,* —— U.S. ——, ——, 101 S.Ct. 1908, 1915, 68 L.Ed.2d 420 (1981), *quoting Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). Here Metal Bank participated in an adversary hearing before the warrant was issued. It was represented by counsel, had the right to call witnesses, to present

---

**3.** On March 23, 1981, I heard argument on the motion to quash and the contempt petition. I also heard testimony in support of the con-

tempt petition. I will refer to the March 23, 1981 proceeding as the contempt hearing.

testimony, and to cross examine witnesses of the Secretary. Metal Bank thus had a meaningful opportunity to be heard.

The Act provides for private employee interviews in general administrative plan inspections. There is no reason why inspections based on allegations of specific violations should be more limited in this respect, so long as the interviews meet the *North American Car* requirement of bearing a reasonable relationship to the violations alleged. This warrant so limits all actions by the OSHA inspectors, including the private interviews.

The legislative history of the Act supports the Secretary's position. Congress emphasized the importance of involving employees in employer health and safety efforts. The Senate Committee Report to the bill specifies that "an employer should be entitled to accompany an inspector on his physical inspection, although the inspector should have an opportunity to question employees in private so that they will not be hesitant to point out hazardous conditions which they might otherwise be reluctant to discuss." S.Rep.No.91–1282, 91st Cong., 2d Sess. (1970), *reprinted in* [1970] U.S.Code Cong. & Ad.News 5177, 5187. The House of Representatives receded in favor of the Senate's amendment providing for private interviews. Conference Rep.No.91–1765, 91st Cong., 2d Sess. (1970), *reprinted in* [1970] U.S.Code Cong. & Ad.News 5177, 5232–33.

Private employee interviews do not conflict with the employer's right under section 657(e) to accompany the OSHA inspectors on all parts of the physical inspection. They simply cannot participate in the private employee interviews accompanying that physical inspection. The warrant limits the OSHA representatives to conducting interviews only at a reasonable time, in a reasonable manner, and to a reasonable extent. Its literal terms do not permit day long interviews with each and every employee working in the areas covered by the warrant.

### C. Records

Metal Bank argues that it did not impede the inspection of records because it never refused to produce the records requested by OSHA. It also argues that inspection of records is not authorized as part of a physical inspection under the Act; and that it was not required by the lead standard to keep the records sought by Secretary.

Section 657(b) of the Act provides that "[i]n making his inspection ... the Secretary may require ... the production of evidence under oath." Section 657(c)(1) requires the employer to keep and make available to the Secretary such records as the Secretary may prescribe by regulation. Section 657(c)(3) specifically requires records regarding the monitoring of potentially toxic substances such as lead. Special inspections based on allegations of specific existing violations are to take place in accordance with the provisions of section 657 as a whole including parts (b) and (c). *North American Car, supra*, 626 F.2d at 323.

The lead standard, 29 C.F.R. § 1910.-1025(n), requires an employer to maintain and make available to the secretary records of monitoring, *id.* at (d); medical surveillance, *id.* at (j); and medical removals, *id.* at (k). On the second day of the inspection Johnson gave Levin a written list of specific records sought under the warrant. On the third day when Johnson asked for the records, Levin advised him to speak with Metal Bank's attorney. The records were never supplied. I am unimpressed with Metal Bank's defense that it never refused to produce the records.

### D. Shower, Lunch and Changing Facilities

Metal Bank argues the Secretary has not shown that Metal Bank was required to have shower, lunch, and changing facilities. The lead standard requires such facilities to be provided for employees whose exposure to lead exceeds the permissible exposure limit. *Id.* at (i). Since there was no lead processing going on for the three days of the inspection, there were no employees exposed beyond the permissible exposure limit during those three days. Metal Bank also

contends that these facilities were not covered by the warrant which specifically refers to areas of exposure to lead. By definition these facilities are intended to be areas of nonexposure. Finally, Metal Bank notes that the enforcement of this portion of the lead standard has been stayed by the United States Supreme Court "to the extent that it requires the construction of new facilities or substantial renovation of existing facilities." *Lead Industries Association, Inc. v. Marshall,* —— U.S. ——, 101 S.Ct. 603, 66 L.Ed.2d 493 (1980), *cert. denied* —— U.S. ——, 101 S.Ct. 3148, 69 L.Ed.2d 997 (1981).

■ It is irrelevant that no lead processing took place during the three days of the inspection. The OSHA inspectors had authority to inspect the areas of lead production to determine their compliance with the Act. Employers cannot evade OSHA's legitimate inspections of areas of exposure to toxic substances by temporary shutdowns during the inspections. If Metal Bank maintained facilities for employees exposed to lead, OSHA was entitled to inspect those facilities, whether or not they were in use during the precise time of the inspection.

■ The Supreme Court stay of enforcement of the lead standard applies only where it requires new construction or substantial renovation of existing facilities. It does not proscribe inspection of existing facilities. The present question is not whether Metal Bank's facilities comply with the currently enforceable lead standard. It is simply whether the warrant covers such facilities if they exist. The warrant does cover such facilities. Metal Bank was notified by the warrant that the inspection would cover areas relevant to lead exposure. These facilities clearly relate to lead exposure of Metal Bank employees. *See North American Car, supra,* 626 F.2d 323.

### IV. Conclusion

Contrary to the recent statements of OSHA's new Administrator, Thorne Au-

chter, OSHA is not intended to be neutral on occupational safety and health issues.[4] Rather, the purpose of the Act is "to assure so far as possible every working man and woman in the nation safe and healthful working conditions and to preserve our human resources." 29 U.S.C. § 651(b) (Congressional Declaration of Purpose). It was intended to lessen the ever-increasing human misery and staggering economic loss caused by work-related injuries and illness. S.Rep.No.91–1282, *reprinted in* [1970] U.S. Code Cong. & Ad.News 5177.

■ Metal Bank's actions in impeding OSHA's inspection have obstructed enforcement of the Act thereby thwarting its purpose. I will hold Metal Bank in civil contempt of Magistrate Naythons's Order.

4. Auchter recently ordered 100,000 OSHA pamphlets on cotton dust standards recalled and destroyed because cover pictured a dying brown lung victim. Auchter said the pamphlet did not allow the government to be neutral on the brown lung issue. United Press International, May 4, 1981.