In re TEXAS HEALTH ENTERPRISES, INC., HEA Management Group, Inc., Health Enterprises of Michigan, Inc. and Health Enterprises of Oklahoma, Inc., Debtors.

Nos. 99–42469, 99–42470, 99–42471, 99–42472.

United States Bankruptcy Court, E.D. Texas, Sherman Division.

Oct. 20, 2000.

Mark E. MacDonald, MacDonald & Schuble, L.L.P., Dallas, TX, for debtors.

James Montgomery, Soules & Wallace, San Antonio, TX, for Lytle Nursing Home, Inc., and James Cotter.

Mike Sutherland, McConnell & Goodrich, Fort Worth, TX, for Official Committee of Unsecured Creditors.

## *OPINION*

DONALD R. SHARP, Chief Judge.

Now before the Court for consideration are: (1) Motion of Lytle Nursing Home, Inc., For An Order Approving Movant's Proposed Plan Of Transition Of The Possession And Operation Of Lytle Nursing Home To Movant and (2) Joint Motion of Debtor And Its Official Creditors' Committee for Stay Of Turnover Pending Lytle Nursing Home Appeals ("Stay Motion"). The Stay Motion seeks a stay of the order denying Debtor's Motion To Assume Lytle Nursing Home Contract, an order denying the motion to reconsider such order and the order on Motion of Lytle Nursing Home, Inc., to Confirm Rejection of Executory Contract And/Or Unexpired Lease and Compel Debtor, Texas Health Enterprises, Inc., To Immediately Surrender Real Property by an Order of Possession and for Alternative Relief. The Motions came before the Court pursuant to regular setting and the Court has considered the pleadings filed, the argument of counsel, the record in this case and the evidence adduced in the instant and prior hearings in regard to the Lytle Nursing Home, Inc., contract that is the subject of the Stay Motion. This opinion constitutes the Court's findings of fact and conclusions of law required by Fed.R.Bankr.Proc. 7052 and disposes of all issues before the Court.

## FACTUAL AND PROCEDURAL HISTORY

Texas Health Enterprises, Inc. ("THE"), HEA Management Group, Inc., Health Enterprises of Michigan, Inc., and Health Enterprises of Oklahoma, Inc. (the "Debtors") filed their voluntary petitions under Chapter 11 of Title 11 of the U.S.Code on August 3, 1999. Since the petition date, Debtors have managed their property and operated their business as debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108. To date, Debtors have not confirmed a plan of reorganization, nor has a disclosure statement been approved. Plans and disclosure statements have been filed by the debtor and the unsecured creditors committee.

Previously, this Court denied a Motion to Assume Real Estate Leases at Lytle Nursing Home Pursuant to Section 365 and Bankruptcy Rule 6006 based upon a finding of no offer to cure non-monetary defaults under the Sublease of Lytle Nursing Home entered into by and between Lytle Nursing Home, Inc., and the debtor, dated March 28, 1988 and the Management Contract for Lytle Nursing Home by and between Lytle Nursing Home, Inc. and the Debtor (referred to hereinafter jointly as the "Lease" ) as extended, non-performance of THE's duties pre- and post-petition and lack of adequate assurance of future performance under the Lease. The Debtor's request for reconsideration of the order denying the Motion To Assume was also denied, whereupon the Debtor filed an appeal of this Court's orders.

Thereafter, the Court considered Lytle Nursing Home, Inc.'s Motion seeking this Court's declaration that the Lease was rejected under 11 U.S.C. § 365(d)(4) (assumption having been denied) and seeking an order for THE to immediately surrender the Lytle Nursing Home to Lytle Nursing Home, Inc. This Court concluded that 11 U.S.C. § 365(d)(4) did not apply to the Lytle Nursing Home Lease and conditionally recognized the rejection of the Lease. However, the Court denied the request for immediate turnover. The Court found that it could not precipitously terminate the Lease given the interests, rights and needs of the residents of the nursing home. The Court conditioned any order requiring the delivery of possession of the Lytle nursing home to Lytle on a showing to this Court that a plan was in place for continuity of care of the elderly and/or infirm residents of the nursing home and its operation within the regulatory guidelines of the State of Texas. The Joint Motion for Stay Pending Appeal was prompted by Lytle's filing of a Motion For An Order Approving Movant's Proposed Plan of Transition Of The Possession And Operation of Lytle Nursing Home To Movant ("Plan Approval Motion").

All parties filed objections or responses to the relief sought by the adverse parties and both the Stay Motion and Plan Approval Motion came before the Court pursuant to regular setting following which the matters were taken under advisement.

### DISCUSSION

■ "Issuance of a stay pending appeal is discretionary and equitable.... The movant bears the burden of proof." *Hayes v. City Univ. of N.Y.*, 503 F.Supp. 946, 962 (S.D.N.Y.), *aff'd sub nom. Hayes v. Human Resources Administration*, 648 F.2d 110 (2d Cir.1981); *accord, BP Oil, Inc. v. Marshall*, 509 F.Supp. 802, 810 (E.D.Pa.1981); *Goldstein v. Miller*, 488 F.Supp. 156, 176 (D.Md.1980), *aff'd mem.*, 649 F.2d 863 (4th Cir.1981); *Evans v. Buchanan*, 455 F.Supp. 705, 708 (D.Del.1978); *Kansas City Royals Baseball Corp. v. Major League Baseball Players Ass'n*, 409 F.Supp. 233, 268 (W.D.Mo.), *aff'd*, 532 F.2d 615 (8th Cir.1976).

■ In *Ruiz v. Estelle*, 666 F.2d 854 (5th Cir.1982), the Fifth Circuit Court, citing to its earlier decision *Ruiz v. Estelle*, 650 F.2d 555 (5th Cir.1981) *("Ruiz I")*, identified the criteria to be applied in determining whether an appellate court

should issue a stay (in Ruiz the plaintiff sought the stay of an injunction) pending appeal. The burden is on the party seeking the stay to establish the prerequisites. The criteria are: (1) whether the movant has made a showing of likelihood of success on the merits, (2) whether the movant has made a showing of irreparable injury if the stay is not granted, (3) whether the granting of the stay would substantially harm the other parties, and (4) whether the granting of the stay would serve the public interest. *Ruiz I*, 650 F.2d at 565 (citing cases).

The Ruiz Court found that "likelihood of success on the merits" need not be a "probability" of success, "instead the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay." *Ruiz I, Ibid.* at 565 citing to *Providence Journal v. Federal Bureau of Investigation*, 595 F.2d 889 (1st Cir.1979), [additional cites omitted]. As the Fifth Circuit Court astutely notes, "[i]f a movant were required in every case to establish that the appeal would probably be successful, the Rule would not require—as it does—a prior presentation to the district judge whose order is being appealed. That judge has already decided the merits of the legal issue. The stay procedure of Fed.R.Civ. P. 62(c) and Fed. R.App.P. 8(a) affords interim relief *where relative harm and the uncertainty of final disposition justify it.*" *Ruiz I, Ibid.* at 565 *[Emphasis added]*.

The Court has considered the record in this case, the arguments of counsel and the pleadings and finds that it must deny the relief sought because there is no relative harm or irreparable harm that will inure to the Debtor if the request for stay is denied and because this Court has absolutely nothing in the record, aside from the arguments of the counsel seeking the stay, upon which this Court might base a finding of a likelihood of success on the merits. As to the former element, the Court is of the opinion that there can be no harm to the Debtor if the appeal succeeds. Simply, the appellate Court would reverse this Court's order putting the nursing home back into the hands of the Debtor. Any loss of income would be offset by the Debtor's relief from the burden of the incumbent costs and expenses of running the nursing home in the interim. The evidence amply demonstrates that the damage to Lytle Nursing Home, Inc., from the continuing loss of income and further delay in implementing its plan for turnover, outweighs that of the Debtor.

As to the latter element, the uncertainty of final disposition to justify the stay pending appeal, this Court cannot ignore the facts: the Debtor filed for relief thirteen months prior to the request for the stay pending the appeal. In the interim, no plan has been confirmed, neither has a disclosure statement been approved. The objections to the plan filed by the Debtor are multitudinous. The operating reports of the Debtor filed with the Court either show no positive cash flow or are not reliable as to profitability as measured by positive cash flow. The first and only testimony the Court has heard to the effect that the Debtor is beginning to have cash flow was heard on October 10, 2000 in a fee application hearing for the Unsecured Creditor's Committee's accountants. The testimony must be deemed less than completely disinterested in such context. Notwithstanding such taint, if any, the accountant who testified on behalf of the Committee's accounting firm, revealed that positive cash flow could only be construed after removing from the bottom line expenditures resulting from problems that were not recurring or were not a regular monthly type of expense. It would be naive to believe that at some magical moment, presumably confirmation, this Debtor will no longer experience problems resulting in such one time expenditures that the accountant has subtracted from the bottom line. In addition, this factfinder is deeply concerned with the accountant's

testimony during the hearing on October 10, 2000, to the effect that the Debtor's computer system used for generating the monthly operating reports required under the Code is unreliable for the task—the ramifications being that all previously filed operating statements must be viewed as dubious.

There was scant evidence as to whether the granting of the stay serves public interest. This Court has previously discussed its deep concern for the well being of the residents of the nursing homes during the course of this bankruptcy proceeding. The persuasive weight of the evidence on this issue favors Lytle Nursing Homes, Inc., given the posture of the Debtor with respect to ability to achieve confirmation, the record in this case including the testimony of various witnesses that this Court has heard in prior hearings, given State regulatory non-compliance and, particularly, the licensing concerns facing the Debtor at this juncture.

The other matter before the Court is the Motion by Lytle Nursing Home seeking approval of its proposed plan implementing the turnover of the nursing home. This Court had previously ordered the parties either agree on a plan for the turnover of the nursing home upon the termination of the lease or submit proposed plans for this Court's consideration. Debtor has submitted no plan but instead relies on its attempt to have all matters stayed while it appeals this Court's earlier orders. The Court is convinced that the plan proposed by Lytle Nursing Home, Inc. adequately addresses its previous concerns about the turnover of the nursing home having a detrimental effect on the elderly residents. Accordingly, the Court orders that the plan set-forth in the Motion filed by Lytle Nursing Home be and it is hereby approved and the parties are instructed to implement the plan so that possession of the nursing home is delivered to Lytle Nursing Home no later than October 31, 2000.

## CONCLUSION

For the foregoing reasons, this Court has determined that the Debtor fails on all four of the elements under the *Ruiz* test. There is no likelihood of success on the merits and the balancing of the equities does not salvage the Debtor's situation. Also, the plan submitted by Lytle Nursing Home for orderly turnover of the nursing home is approved and shall be implemented no later than October 31, 2000. An order will be entered in accordance with this opinion.